Joseph Lee HAMEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 0797–94.

Court of Criminal Appeals of Texas.

Jan. 24, 1996.

Jon R. Waggoner, Amarillo, for appellant.

Bruce Sadler, Assist. Dist. Atty., Amarillo, Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

KELLER, Judge.

A jury convicted appellant of aggravated assault and assessed punishment at two years confinement, probated. The Court of Appeals remanded for a new punishment hearing after finding error in the jury charge at the punishment phase of the trial. We granted review to consider the Court of Appeals' determination that the trial court prop-

erly denied appellant's requested instructions on self-defense and defense of a third person. We reverse.

On July 31, 1992, appellant's sister, Mary Glissen, called appellant and told him she was scared for her life. She was hysterical and crying. She said that her boyfriend, Charlie Brown, had kicked in the front door and she was afraid he would come back and find her. Mary and Charlie had a history of physical violence with each other, including Charlie's holding a loaded gun to her head. Appellant went to the house and replaced the lock on the front door. Although the door looked more secure, the door jamb was damaged and the new lock would not have prevented someone kicking the door in again.

The next day Mary called appellant and told him that Charlie had come back, kicked in the back door, and destroyed most of the things in the house. The furniture was ripped, pictures were torn off walls and shattered, and food had been thrown out of the refrigerator. She said she was scared to be at the house and asked appellant to move her belongings out of the house. Mary told appellant to be very careful because Charlie was carrying a gun in the car. Appellant and his sixty-seven year old father, Leo, went to Mary's house to pack her possessions. The house looked like a cyclone had been through it; nothing was left intact. Appellant began boxing up Mary's things, using his pocket knife to cut tape in the process. When appellant left to get additional boxes for packing, he gave his father an aluminum tire thumper for protection in case Charlie should come back.

Shortly after appellant returned from his errand, Charlie came into the house, approached appellant, and asked in an angry, threatening tone, "Where is that bitch?" Appellant told Charlie he did not want any trouble, and asked him to go away and let them take Mary's things. As Charlie moved back toward the front door, Leo came into the room holding the tire thumper by his side. Leo asked Charlie to leave. Charlie said if appellant did not take care of his father, Charlie was going to shoot Leo. Charlie also said that he had something in the car to shoot him with. Charlie started to go out the front door. Charlie's car was parked in front, six to eight feet from the door. Appellant, believing Charlie was going to the car to get his gun, charged Charlie and stabbed him in the stomach. Charlie tried to get in the driver's door of his car. Appellant, thinking Charlie was trying to get his gun, prevented Charlie from reaching his car. As soon as Charlie stopped trying to get to the car, appellant stopped advancing on him. Charlie staggered to a neighbor's house for help.

Appellant and his father testified that for several reasons they feared for their lives when Charlie came into the house. They knew about Charlie's past violence toward Mary and others; Mary had warned appellant that Charlie would hurt somebody when he was as angry as he had been; Mary had said that Charlie had a gun in his car; the condition of the house indicated that it had been violently ransacked; and about a month before this incident, Charlie had told appellant that he had shot a man and that he had been convicted for being a felon in possession of a firearm. Based upon this knowledge, appellant believed that Charlie had a gun in his car and intended to carry out the threat he had just made.

Before the Court of Appeals, appellant contended that the trial court erred in denying appellant's request for jury instructions on self-defense and defense of a third person. The Court of Appeals acknowledged that whether a defendant is entitled to a self-defense instruction depends upon the defendant's assessment of the situation and his belief regarding the necessity of the use of force. The Court also noted appellant's testimony that he believed the victim had a gun in his car and was a threat to appellant and his father. Nevertheless, the Court of Appeals held that the denial of the requested instructions was not error.

■ The Court relied on *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim.App.1986), to reach its conclusion. In *Werner,* we stated, "In the absence of evidence of use or attempted use of deadly force by the deceased, the statutory defense permitted by § 9.32 is not available, and a defendant is not entitled to a jury instruction." The Court of Appeals

held that appellant was not entitled to the requested charges because there was no evidence that Charlie used or attempted to use deadly force.

Section 9.31 of the Texas Penal Code states in pertinent part:

(a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(b) The use of force against another is not justified

(1) in response to verbal provocation alone.

Section 9.32, which appellant claimed was applicable, states in pertinent part:

A person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31 of this code;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force.

Section 9.33 provides, essentially, that a person is justified in using deadly force to protect a third person when that third person is threatened by circumstances that would entitle the actor to protect himself, and the actor reasonably believes his intervention is immediately necessary.

Appellant was entitled to a charge on self-defense if evidence was presented which, if believed, showed that appellant reasonably believed his use of deadly force was immediately necessary to protect himself against Charlie's use or attempted use of deadly force and that a reasonable person in appellant's situation would not have retreated.

*Werner* involved, not a jury instruction issue, but the propriety of the exclusion of evidence relating to the Holocaust syndrome.

The defendant in that case argued that the excluded evidence was relevant to his self-defense claim. We addressed the issue of self-defense only as it related to our decision that it was not error to exclude the contested evidence. The question of whether self-defense requires actual, as opposed to perceived, use or attempted use of deadly force was not before us because the defendant in that case, "did not, and plainly could not have testified that he reasonably believed it necessary to shoot the deceased in order to defend himself against the deceased's use or attempted use of deadly force." *Id.* at 644. Thus, although we framed our conclusion in terms of the deceased's actual use or attempted use of deadly force, what we in fact considered was the defendant's belief in that regard. *Werner* should not be interpreted to preclude a self-defense instruction where the defendant reasonably perceives that he is in danger, even though that perception may be incorrect.

■ In *Jones v. State* 544 S.W.2d 139 (Tex.Crim.App.1976), we held that it is not necessary that a jury find that the deceased was using or attempting to use unlawful deadly force against a defendant in order for the defendant's right of self-defense to exist. A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App. 1984). The term "reasonably believes" in § 9.32 encompasses the traditional holding that a suspect is justified in defending against danger as he reasonably apprehends it. *Semaire v. State,* 612 S.W.2d 528, 530 (Tex.Crim.App.1981).

■ Furthermore, an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Miller v. State,* 815 S.W.2d 582, 585 (Tex.Crim.App.1991).

■ Appellant's own testimony raised the issue of self-defense. Appellant testified that he believed Charlie was going to the car for a gun, and that he could not let Charlie get to

the weapon and fulfill the threat he had made. Appellant said he believed the action he took was necessary to defend his life and the life of his father. Appellant thus testified that he believed deadly force was immediately necessary to protect himself against Charlie's attempted use of deadly force. Given the circumstances surrounding the incident, particularly Mary's warning that Charlie had a gun in his car and Charlie's threat, we cannot say that it was unreasonable for appellant to believe that Charlie was going to his car in an attempt to carry out his threat.

Regarding the possibility of retreat, appellant testified that he was not familiar with Mary's house, and did not know whether he and his father could leave through the fenced back yard. Charlie was far closer to his car than appellant was to the back door of the house, and appellant did not think he could take a chance on being caught in the back yard with only a pocket knife if Charlie had a gun. There is, thus, evidence that would support a belief that retreat was not a reasonable option.

Finally, appellant was not entitled to a self-defense instruction if his use of force was in response to verbal provocation alone. But Charlie's threat did not stand alone. His move toward the car was the physical act that rendered his conduct more than a mere threat.

Appellant was entitled to a jury instruction on self-defense. The evidence recounted above also entitled appellant to an instruction on defense of a third person. Because appellant properly objected to the charge, reversal is required if the error was calculated to injure the rights of the defendant. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). We remand this cause to the Court of Appeals for further proceedings consistent with *Almanza*.

CLINTON, J., not participating.

WHITE and MEYERS, JJ. dissent.