Jesus REICH–BACOT, Appellant

v.

The STATE of Texas, Appellee

No. 06–95–00119–CR.

Court of Appeals of Texas, Texarkana.

March 17, 1997.

---

Robert P. Abbott, Coppell, for appellant.

Sue Korioth, Kevin P. Yeary, Assistant District Attorneys, Dallas, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION ON REMAND

GRANT, Justice.

Jesus Reich–Bacot was convicted of murder and sentenced to imprisonment for life and a $10,000 fine. On appeal, this Court found that the trial judge erred by failing to instruct the jury on self-defense. *Reich–Bacot v. State,* 914 S.W.2d 666, 668–69 (Tex. App.—Texarkana 1996). The Court of Criminal Appeals vacated our judgment and remanded the case so that we could conduct a harm analysis of the error under the authority of *Hamel v. State,* 916 S.W.2d 491, 494 (Tex.Crim.App.1996), which was decided by the Court of Criminal Appeals after our initial opinion in this case. *Reich–Bacot v. State,* 936 S.W.2d 961 (Tex.Crim.App.1996).

In *Hamel,* as in this case, the trial court did not instruct the jury on self-defense, over proper objection by the defense. The Court in *Hamel* remanded to the court of appeals to conduct a harm analysis consistent with *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim. App.1984). *Almanza* provides that when charge error is properly preserved, as in this case, reversal is required as long as the error is not harmless. *Id.* at 171. This term is not interpreted as "harmless error" under TEX. R.APP. P. 81(b)(2), but has been explained as showing the presence of "some harm" as determined through an examination of the entire record. *Atkinson v. State,* 923 S.W.2d 21, 27 (Tex.Crim.App.1996); *Black v. State,* 723 S.W.2d 674, 675 n. 2 (Tex.Crim.App. 1986).

The Court also directed our attention to TEX.CODE CRIM. PROC. ANN. art 36.19 (Vernon 1981), which provides that charge error should not require reversal "unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *Atkinson,* 923 S.W.2d 21.

When a charge error has been preserved by objection, reversal is required as long as the error is not harmless. *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App. 1994). Any harm, regardless of degree, requires reversal of the conviction, but the burden of proof lies with the defendant to persuade the reviewing court that he suffered some actual harm as a consequence of the charge error. *Id.*

In this case, Bacot was convicted of the murder of Genovevo Manuel Martinez ("Manolito"). His defensive argument was based upon contentions that he acted in self-defense. The only evidence that Bacot can point to in support of his self-defense theory is that of Anna Avila, his former wife, who testified that:

A. Only thing I saw happen was I heard a shot real loud and the movement, only thing I saw was Bacot—I heard a shot and I saw Manolito get on his knees and that's when I saw—I heard only one gunshot and that's when I heard Manolito

get in his knees and he didn't have time to get—I knew it looked like he had a gun in his hand. After, when he was on the floor, that's when I saw it.

Q. Did you see a gun in Manolito's hand before or after you heard a shot fired?

A. It was all after, when he was on the ground.

A little later in her testimony, Avila testified:

A. Well, I saw—when I heard the shot, Manolito was already on his knees. He didn't have time to pull any gun, you know, anything.

On cross-examination, Avila testified as follows:

Q. Did Manolito have a gun that day?

A. I only saw the gun when he leaned on the floor.

Q. You mean on the grass?

A. Yes, sir, when he was leaning on the grass.

Q. So you did see him with a gun?

A. Yes, sir.

Q. When he was on his knees he was reaching for the gun, or what did you see?

A. Well, I didn't see him pulling a gun, anything like that. When I saw him fell on the ground and fell back, that's when I saw the gun on the floor.

Q. So you never—you never saw Manolito pull his gun?

A. No, sir, I didn't.

. . . .

Q. Did you ever tell anybody you saw Manolito pull his gun and fall straight back?

A. I didn't—I don't—he didn't pull it out. I saw it. I thought he did, but it was on the floor—on the ground, on the grass.

. . . .

[The attorney begins questioning the witness about a statement that she had previously signed.]

Q. Let me direct your attention to the statement that you made in April last year. Isn't it true this sentence says that Manolito also pulled his gun and fell straight back?

A. Yes, sir, he fell with the gun.

Q. Did he pull—did you see him pull his gun?

A. Well, he didn't pull to point. I didn't see him point it at anybody.

Q. I didn't ask if he pointed. I asked whether you saw him pull the gun?

A. No, sir, I didn't. I didn't.

Q. So some things you said in your statement didn't actually occur?

A. Well, it wasn't pulled. I saw it on the ground.

Q. So these words were typed by the investigator?

A. Yes, sir.

Q. Did you have opportunities to read it or review it?

A. Yes, I did.

Q. So you did not see Manolito pull his gun?

A. No, I didn't.

Q. But you saw him with a gun?

A. With a gun.

Q. When he fell?

A. Yes.

The repetition of the testimony about Martinez not pulling the gun appears one other place in the record. Otherwise, there is nothing more in the record about Martinez having a gun. Avila testified that prior to the shooting Bacot had come into the house and told her to stay in the kitchen. Then Bacot went to the backyard and turned the riding lawnmower on and just let it sit there. She testified that she saw Bacot fire his pistol at Martinez and that blood was spurting from Martinez's forehead.

There was no evidence that Martinez attacked or threatened Bacot. The gist of the testimony by Avila is that she saw a gun after the shooting. The testimony of Avila does not suggest that Martinez had threatened or pulled a gun prior to his being shot by Bacot. The mere possession by the victim of a weapon without evidence of threatened use, or circumstances showing attempted use, does not present evidence persuasive of self-defense.

After reviewing the entire record, we are not persuaded that Bacot has suffered some actual harm as a consequence of the trial court's failure to include a self-defense instruction in the charge.

Upon remand, the judgment of the trial court is affirmed.