NO. 07-03-0515-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 7, 2005


______________________________



CYNTHIA M. WHITE, 


 Appellant


v.



THE STATE OF TEXAS, 


 Appellee

_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-402,114; HON. CECIL PURYEAR, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Cynthia M. White (appellant) appeals her conviction for murder. Via four issues, she
contends that the trial court 1) violated both the state and federal constitutions by
prohibiting her from questioning potential jurors about the use of deadly force to thwart a
sexual assault and 2) erred by failing to include her particular instruction on self-defense
in the charge. We affirm.



Background


 Appellant was indicted for the murder of Jesse Salgado (Salgado). During the trial,
appellant's trial counsel attempted to ask a potential jury member the following question:

 Ms. Campbell, what are your views on a woman using deadly force to
prevent a rape?


 MR. POWELL: Judge, I'm going to again - - I'm going to object now. We're
getting into specific fact patterns that he's getting jurors to commit on. He
has already stated to the jury panel that this - - in my opinion, improperly, that
this case was about the prevention of a rape, and that someone used deadly
force, and now he's getting jurors to commit to specific fact patterns. And I
object to that question.


 THE COURT: Sustained.


 MR. CROOK: Let me put it another way, Ms. Campbell. What are your
feelings about the law allowing the use of deadly force to prevent the
commission of certain crimes?


 MS. CAMPBELL: I'd have to hear every single fact.


 MR. CROOK: Okay. No one has heard any evidence yet; right? I'm
speaking in general terms, as a general proposition. What is the feeling you
have - - should a person be allowed to use deadly force to prevent, say,
aggravated robbery?


 MS. CAMPBELL: I'm not sure.


 MR. CROOK: Excuse me?


 MS. CAMPBELL: I'm not sure.


 MR. CROOK: Okay. Mr. Urive, aggravated robbery, should a person be
able to use a gun, say, if they're being robbed by somebody else who has a
weapon? 

 

 MR. URIVE: It depends on the situation.


 MR. CROOK: Okay. How might it depend on the situation?


Defense counsel continues to ask several other jurors about their beliefs regarding the use
of deadly force if the person is attempting to commit aggravated robbery. He, then, shifts
to asking the same question but with regards to aggravated sexual assault.

 MR. CROOK: Okay. As a general question, what about sexual assault? 
Should a person be - - male or female, be permitted to use deadly force to
prevent sexual assault?


 MR. POWELL: Judge, again, I'm going to object to the way - - the phrase of
the question. Just in and of itself, the Code doesn't allow that just - - to
prevent a sexual assault, all the other elements have to apply for self-defense. And with that question - - I mean, that's a specific fact pattern that
he is getting these jurors to commit to, when all the other elements of self-defense have to apply, the duty to retreat, deadly force being used against
you, all those things are still applicable, even if a rape is taking place.


 MR. CROOK: Judge, under the Code you don't have to have deadly force
used against you to prevent either aggravated robbery, kidnapping,
aggravated sexual assault, or sexual assault.


 THE COURT: The objection is sustained, counsel.


Defense counsel continues questioning the jurors about different scenarios which do not
include sexual assault. After voir dire was completed but prior to exercising his peremptory
strikes, defense counsel made the following motion:

 MR. CROOK: Yes, Your Honor. I've actually got two quick motions. One is,
now comes the Defendant and moves to quash the jury panel by reason of
the fact that Counsel for the Defendant was not allowed to voir dire on a
defense under the law available to the Defendant that he should have been
permitted to do voir dire. More particularly, Penal Code 9.32 permits the use
of deadly force in defense of a person to stop or prevent another's imminent
commission of, among other offenses, sexual assault, and Defendant avers
that her due process rights under the U.S. Constitution and due course of law
- - well, actually, under the Texas Constitution it violated, along with
applicable case law, by the fact that Counsel for Defendant was not permitted
to voir dire the jury on whether they could follow that cardinal principle of law
in this murder case with a self-defense theory, mainly, that one is permitted
to use deadly force to prevent the imminent commission of sexual assault. 


 And on that basis Defendant does move to quash the jury panel or, in
the alternative, for further voir dire.

 

 THE COURT: Denied. 

 Then, during discussion of the charge, appellant requested an instruction on self-
defense against a sexual assault. The trial court denied the request but instructed the jury
on self-defense in general. The jury found appellant guilty of murder. Punishment was
assessed at life in prison. 

Issue Four - Charge Error


 We address appellant's fourth issue first. In it, she contends that the trial court
should have added a passage in the self-defense instruction it incorporated into the jury
charge. The passage, as requested by appellant, read that one could use deadly force
against the "imminent commission of aggravated kidnapping, murder, rape, aggravated
rape, robbery, or aggravated robbery by Jessie Salgado [the decedent]." We overrule the
issue.

 A defendant is entitled to an instruction on every defensive issue raised by the
evidence. Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). In other words,
an instruction must be submitted upon the appellant's request if evidence from any source
raises the defensive theory, regardless of whether such evidence is strong or weak,
impeached or unimpeached, or of dubious credibility. Hamel v. State, 916 S.W.2d 491, 493
(Tex. Crim. App.1996); Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). Yet,
the converse is equally true; if there is no evidence to support the defensive issue, then the
trial court need not refer to it in its charge. 

 Here, appellant sought the inclusion of the entire passage we quoted above. Yet,
she fails to direct us to any evidence of record indicating that Salgado engaged in
kidnapping, murder, or robbery. Nor did our review of the record uncover any such
evidence. Given this, appellant was not entitled to the particular instruction she requested,
and the trial court did not err in opting to exclude it from the charge. 

Issues One, Two and Three


 In her first three issues, appellant contends that the trial court violated her federal
and state constitutional rights by not allowing her to have a fair trial. Furthermore, she was
denied a fair trial because the court prohibited her from questioning the jury venire about
their thoughts regarding the use of deadly force in defense of a sexual assault. We
overrule the issues.

 Assuming arguendo that the trial court was incorrect when it held that the
interrogatories propounded were commitment questions, we find that the error was
harmless. See Rich v. State, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (reiterating that
a trial judge's impermissible exclusion of a proper question during jury voir dire is subject
to a harmless error analysis). In making that determination, we apply the harm analysis
encompassed by Rule 44.2(b) of the Texas Rules of Appellate Procedure. See id. at 577-78 (applying 44.2(b)). According to that rule, error that does not affect substantial rights
must be ignored. Tex. R. App. P. 44.2(b). Additionally, the indicia considered are those
reviewed when considering the harm arising from the improper admission of evidence. 
Rich v. State, 160 S.W.3d at 577-78. They include:

 consider[ation of] everything in the record, including any testimony or
physical evidence admitted for the jury's consideration, the nature of the
evidence supporting the verdict, the character of the alleged error and how
it might be considered in connection with other evidence in the case, the jury
instructions, the State's theory and any defensive theories, closing
arguments, voir dire, and whether the State emphasized the error.


Id.

 The record before us illustrates that 1) appellant and the victim had worked together
on the day of the offense and the victim had indicated while at work that he wanted to have
sex with appellant, 2) the victim gave appellant a ride to get beer and to make a phone call
at a liquor store, 3) appellant went to the victim's trailer home where she used a cell phone
to call a friend, 4) after being stabbed, the victim made it to the manager's trailer for help
and made the statement that appellant had stabbed him, 5) the manager testified that
appellant did not seem upset, 6) the manager did not notice any injuries on appellant, 7)
no statements to the manager were made by appellant that the victim had attempted to
rape her, 8) appellant never advised the sheriff's officer at the scene that appellant had
attempted to rape her or that she was injured, 9) when the victim accused appellant (in the
presence of a sheriff's deputy) of stabbing him, appellant denied it and replied that she
simply "'came over to take care of [him],'" 10) appellant said that she did not know how the
victim was stabbed and that he had called her to come over and when she arrived she
found him sitting in his car with blood on his back, 11) appellant never complained of any
injuries at the scene, 12) the investigating officers testified that upon searching the victim's
trailer they did not find its condition to be representative of a struggle, i.e. there was no
overturned furniture or broken items that could have easily been toppled during a fight, 13)
appellant gave conflicting statements and in her second statement she indicated an
argument occurred because she was using too many minutes on the victim's cell phone
and this caused the victim to punch appellant in the eye, 14) the victim shoved appellant
and she fell down, according to appellant, 15) a fight ensued wherein appellant stabbed the
victim with a knife, 16) in her third statement, appellant represented that the victim had
asked her several times at work for sex and became angry when she refused, 17) again,
in her third statement, appellant represented that the victim became angry over her use of
the cell phone and a fight ensued, 18) appellant was seen by a neighbor trying to drag the
victim back into the trailer house by his hair at the time of the altercation, 19) appellant's
injuries were not consistent with those that would be suffered by someone defending
herself from a sexual assault, and 20) upon hearing that the victim died, appellant told the
investigating officer that she would disclose "what really happened" and that "she attributed
the beginning of the rowel [sic] to her use of the cell phone." Moreover, the trial court
allowed appellant to voir dire the jury venire on the issue of self-defense in general. The
totality of the record leads us to conclude that denying appellant the chance to voir dire the
panel on her right to defend herself from a sexual assault did not affect her substantial
rights. (1) Having overruled each issue, we affirm the judgment of the trial court.

 

 Brian Quinn

 Chief Justice


Do not publish.
1. We note that even if harm was assessed under Rule 44.2(a), i.e. the analysis applicable to
constitutional error, our decision would be the same. Beyond reasonable doubt, the purported error did not
contribute to appellant's conviction or punishment.