NO. 07-03-0515-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 7, 2005

_____

CYNTHIA M. WHITE,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-402,114; HON. CECIL PURYEAR, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Cynthia M. White (appellant) appeals her conviction for murder. Via four issues, she contends that the trial court 1) violated both the state and federal constitutions by prohibiting her from questioning potential jurors about the use of deadly force to thwart a sexual assault and 2) erred by failing to include her particular instruction on self-defense in the charge. We affirm.

## Background

Appellant was indicted for the murder of Jesse Salgado (Salgado). During the trial, appellant's trial counsel attempted to ask a potential jury member the following question:

> Ms. Campbell, what are your views on a woman using deadly force to prevent a rape?
>
> MR. POWELL: Judge, I'm going to again - - I'm going to object now. We're getting into specific fact patterns that he's getting jurors to commit on. He has already stated to the jury panel that this - - in my opinion, improperly, that this case was about the prevention of a rape, and that someone used deadly force, and now he's getting jurors to commit to specific fact patterns. And I object to that question.
>
> THE COURT: Sustained.
>
> MR. CROOK: Let me put it another way, Ms. Campbell. What are your feelings about the law allowing the use of deadly force to prevent the commission of certain crimes?
>
> MS. CAMPBELL: I'd have to hear every single fact.
>
> MR. CROOK: Okay. No one has heard any evidence yet; right? I'm speaking in general terms, as a general proposition. What is the feeling you have - - should a person be allowed to use deadly force to prevent, say, aggravated robbery?
>
> MS. CAMPBELL: I'm not sure.
>
> MR. CROOK: Excuse me?
>
> MS. CAMPBELL: I'm not sure.
>
> MR. CROOK: Okay. Mr. Urive, aggravated robbery, should a person be able to use a gun, say, if they're being robbed by somebody else who has a weapon?
>
> MR. URIVE: It depends on the situation.
>
> MR. CROOK: Okay. How might it depend on the situation?

2

Defense counsel continues to ask several other jurors about their beliefs regarding the use of deadly force if the person is attempting to commit aggravated robbery. He, then, shifts to asking the same question but with regards to aggravated sexual assault.

> MR. CROOK: Okay. As a general question, what about sexual assault? Should a person be - - male or female, be permitted to use deadly force to prevent sexual assault?

> MR. POWELL: Judge, again, I'm going to object to the way - - the phrase of the question. Just in and of itself, the Code doesn't allow that just - - to prevent a sexual assault, all the other elements have to apply for self-defense. And with that question - - I mean, that's a specific fact pattern that he is getting these jurors to commit to, when all the other elements of self-defense have to apply, the duty to retreat, deadly force being used against you, all those things are still applicable, even if a rape is taking place.

> MR. CROOK: Judge, under the Code you don't have to have deadly force used against you to prevent either aggravated robbery, kidnapping, aggravated sexual assault, or sexual assault.

> THE COURT: The objection is sustained, counsel.

Defense counsel continues questioning the jurors about different scenarios which do not include sexual assault. After voir dire was completed but prior to exercising his peremptory strikes, defense counsel made the following motion:

> MR. CROOK: Yes, Your Honor. I've actually got two quick motions. One is, now comes the Defendant and moves to quash the jury panel by reason of the fact that Counsel for the Defendant was not allowed to voir dire on a defense under the law available to the Defendant that he should have been permitted to do voir dire. More particularly, Penal Code 9.32 permits the use of deadly force in defense of a person to stop or prevent another's imminent commission of, among other offenses, sexual assault, and Defendant avers that her due process rights under the U.S. Constitution and due course of law - - well, actually, under the Texas Constitution it violated, along with applicable case law, by the fact that Counsel for Defendant was not permitted to voir dire the jury on whether they could follow that cardinal principle of law in this murder case with a self-defense theory, mainly, that one is permitted to use deadly force to prevent the imminent commission of sexual assault.

3

And on that basis Defendant does move to quash the jury panel or, in the alternative, for further voir dire.

THE COURT: Denied.

Then, during discussion of the charge, appellant requested an instruction on self-defense against a sexual assault. The trial court denied the request but instructed the jury on self-defense in general. The jury found appellant guilty of murder. Punishment was assessed at life in prison.

### *Issue Four - Charge Error*

We address appellant's fourth issue first. In it, she contends that the trial court should have added a passage in the self-defense instruction it incorporated into the jury charge. The passage, as requested by appellant, read that one could use deadly force against the "imminent commission of aggravated kidnapping, murder, rape, aggravated rape, robbery, or aggravated robbery by Jessie Salgado [the decedent]." We overrule the issue.

A defendant is entitled to an instruction on every defensive issue raised by the evidence. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). In other words, an instruction must be submitted upon the appellant's request if evidence from any source raises the defensive theory, regardless of whether such evidence is strong or weak, impeached or unimpeached, or of dubious credibility. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Hayes v. State,* 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). Yet, the converse is equally true; if there is no evidence to support the defensive issue, then the trial court need not refer to it in its charge.

Here, appellant sought the inclusion of the entire passage we quoted above. Yet, she fails to direct us to any evidence of record indicating that Salgado engaged in kidnapping, murder, or robbery. Nor did our review of the record uncover any such evidence. Given this, appellant was not entitled to the particular instruction she requested, and the trial court did not err in opting to exclude it from the charge.

### *Issues One, Two and Three*

In her first three issues, appellant contends that the trial court violated her federal and state constitutional rights by not allowing her to have a fair trial. Furthermore, she was denied a fair trial because the court prohibited her from questioning the jury venire about their thoughts regarding the use of deadly force in defense of a sexual assault. We overrule the issues.

Assuming *arguendo* that the trial court was incorrect when it held that the interrogatories propounded were commitment questions, we find that the error was harmless. *See Rich v. State,* 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (reiterating that a trial judge's impermissible exclusion of a proper question during jury voir dire is subject to a harmless error analysis). In making that determination, we apply the harm analysis encompassed by Rule 44.2(b) of the Texas Rules of Appellate Procedure. See *id.* at 577-78 (applying 44.2(b)). According to that rule, error that does not affect substantial rights must be ignored. TEX. R. APP. P. 44.2(b). Additionally, the indicia considered are those reviewed when considering the harm arising from the improper admission of evidence. *Rich v. State*, 160 S.W.3d at 577-78. They include:

> consider[ation of] everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how

5

it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Id.*

The record before us illustrates that 1) appellant and the victim had worked together on the day of the offense and the victim had indicated while at work that he wanted to have sex with appellant, 2) the victim gave appellant a ride to get beer and to make a phone call at a liquor store, 3) appellant went to the victim's trailer home where she used a cell phone to call a friend, 4) after being stabbed, the victim made it to the manager's trailer for help and made the statement that appellant had stabbed him, 5) the manager testified that appellant did not seem upset, 6) the manager did not notice any injuries on appellant, 7) no statements to the manager were made by appellant that the victim had attempted to rape her, 8) appellant never advised the sheriff's officer at the scene that appellant had attempted to rape her or that she was injured, 9) when the victim accused appellant (in the presence of a sheriff's deputy) of stabbing him, appellant denied it and replied that she simply "'came over to take care of [him],'" 10) appellant said that she did not know how the victim was stabbed and that he had called her to come over and when she arrived she found him sitting in his car with blood on his back, 11) appellant never complained of any injuries at the scene, 12) the investigating officers testified that upon searching the victim's trailer they did not find its condition to be representative of a struggle, *i.e.* there was no overturned furniture or broken items that could have easily been toppled during a fight, 13) appellant gave conflicting statements and in her second statement she indicated an argument occurred because she was using too many minutes on the victim's cell phone and this caused the victim to punch appellant in the eye, 14) the victim shoved appellant

6

and she fell down, according to appellant, 15) a fight ensued wherein appellant stabbed the victim with a knife, 16) in her third statement, appellant represented that the victim had asked her several times at work for sex and became angry when she refused, 17) again, in her third statement, appellant represented that the victim became angry over her use of the cell phone and a fight ensued, 18) appellant was seen by a neighbor trying to drag the victim back into the trailer house by his hair at the time of the altercation, 19) appellant's injuries were not consistent with those that would be suffered by someone defending herself from a sexual assault, and 20) upon hearing that the victim died, appellant told the investigating officer that she would disclose "what really happened" and that "she attributed the beginning of the rowel [sic] to her use of the cell phone." Moreover, the trial court allowed appellant to voir dire the jury venire on the issue of self-defense in general. The totality of the record leads us to conclude that denying appellant the chance to voir dire the panel on her right to defend herself from a *sexual assault* did not affect her substantial rights.[1]     Having overruled each issue, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.

---

[1] We note that even if harm was assessed under Rule 44.2(a), *i.e.* the analysis applicable to constitutional error, our decision would be the same. Beyond reasonable doubt, the purported error did not contribute to appellant's conviction or punishment.