NO. 07-08-0426-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 6, 2010

_____

JEREMY D. CHANEY,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2008-419,247; HONORABLE CECIL G. PURYEAR, PRESIDING

_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Jeremy D. Chaney was convicted of assault against a family member (his former wife).  He contends the trial court committed error in failing to give him an instruction on the affirmative defense of protection of life or health.  We affirm the judgment.

*Background*

On January 25, 2008, appellant and his former wife, Betty, went to pick up her daughter from her place of employment.  The daughter refused to get into the car when she observed that appellant was with her mother.  Appellant and Betty left but became

engaged in an argument with each other. This resulted in Betty exiting the car at an intersection and crossing multiple lanes of traffic. Appellant gave chase in the vehicle, met Betty in a nearby parking lot, grabbed her by her hair and pulled her back into the car. This was witnessed by various people who attempted to come to her aid. One heard Betty say that appellant was going to kill her.

After forcing Betty into the car, appellant drove away. However, he was soon stopped by the police. One officer confronted appellant who simply indicated that he was driving his wife home. This same officer also questioned Betty and noticed that she had red marks on the inside of her left bicep and clumps of her hair in her hand.

At trial, appellant testified that Betty was drunk, initially attempted to exit the vehicle while it was moving, eventually left it while stopped at an intersection, and ran into the traffic. He also asserted that he gave chase to protect her.

*Instruction*

As previously mentioned, appellant believed that he was entitled to the submission of an instruction informing the jury that a person is justified in using force other than deadly force, against another when and to the degree he reasonably believes the force is immediately necessary to prevent the other from committing suicide or inflicting serious bodily injury to himself. TEX. PENAL CODE ANN. §9.34(a) (Vernon 2003). It was denied him, however. Nonetheless, the trial court did charge the jury on the defense of necessity. Per the latter, the jurors were told that an accused's conduct is justified when the actor reasonably believes it is immediately necessary to avoid imminent harm and the desirability and urgency of avoiding the harm clearly outweighs,

according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. *Id.* §9.22.

It is true that a defendant is entitled to a jury instruction on every defense as long as there is evidence to raise it. *Granger v. State,* 3 S.W.3d 36, 38 (Tex. Crim. App. 1997). Furthermore, the source, credibility, or strength of the evidence is immaterial to the determination of whether the instruction should be included in the charge. *Hamel v. State,* 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). For purposes of this appeal, we assume *arguendo* that sufficient evidence appeared of record to warrant the submission of the instruction denied appellant. That being done, the issue becomes whether the omission was harmful. And, because appellant requested the instruction, the pertinent test for assessing harm is whether the error was calculated to injure his rights. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

We conclude that the requisite harm was not shown at bar. This is so for several reasons. First, there is a significant overlap between the defenses of necessity and protection of life or health. *Kenny v. State,* 292 S.W.3d 89, 101 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd). Both focus upon the need to exert force in aid of another. Furthermore, it is conceivable that an instruction on necessity may ameliorate any harm posed by the omitted instruction. That is, the former provided the jury with a means of finding appellant's conduct justifiable if needed to protect Betty from herself, and the same is true of the latter. So, it is rather difficult to say that appellant was actually denied the benefits of the defense he pursued. Of course, the jurors had to accept his version of events. Moreover, and unlike the defensive instruction denied him, that of necessity relieved appellant of having to prove that his ex-wife was about to commit

3

suicide or suffer serious bodily injury. Indeed, the instruction submitted required no proof that Betty faced a risk of death or serious bodily injury but only that there was the presence of imminent harm. And, one cannot deny that the rather amorphous concept "harm" could be interpreted as encompassing much more than death or serious bodily injury.

Second, other than appellant's own testimony, little to no other evidence supported his proposition that he was acting for the good of Betty. Rather, those without an obvious potential for personal bias spoke of seeing his aggressive behavior and the fear emanating from Betty. So too did one or more describe the rather insulting words used by him to describe Betty at the time. Such is not necessarily demeanor exemplified by a person who cares for the well-being of another to whom his actions are directed.

Third, among the plethora of evidence tendered to the jurors was that illustrating appellant's criminal history. It encompassed multiple convictions for assaultive conduct, some of which was directed against Betty. Having been convicted of assaulting his ex-wife in the past hardly strengthens the contention that the physical force used against her at bar was for her own protection.

In sum, appellant was afforded the opportunity to gain freedom by justifying his conduct via the instruction submitted. And while the evidence supporting his claimed defense was weak, that negating it was rather strong. So too did his criminal history tend to negate his credibility. Thus, we cannot say that appellant was harmed when the

4

trial court omitted the instruction at issue.  Consequently, we overrule the point of error and affirm the judgment.

                                        Brian Quinn
                                        Chief Justice

Do not publish.

5