

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00441-CR

LARRY KIRK POINTER                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

### FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

### MEMORANDUM OPINION[1]

----------

In two points, Larry Kirk Pointer—who was convicted of murder—alleges that the trial court erred by (1) sustaining the State's objection to evidence that the deceased had once "gone to jail" in the 1990s for a "domestic situation" and (2) denying his requested instruction on self defense. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Exclusion of Evidence Regarding Arrest

The evidence showed that appellant stabbed Michael Wells. Wells's mother testified that he suffered from Erb's palsy, which caused his right arm to be smaller than his left and restricted upward motion in that arm. She also testified that her relationship with Wells had been distant over the past nine years. According to Wells's mother, a large number of people attended his funeral. On cross-examination, the defense asked her whether Wells was "pretty feisty," and she said, "No, I mean, I never saw him have a temper." When asked by the defense if she was aware that Wells had been arrested for resisting arrest, she said, "No." After she answered the question, the prosecutor objected on relevance grounds and asked to approach the bench. The following exchange occurred outside the jury's presence:

> THE COURT: What is your legal response, [defense counsel]?
>
> [DEFENSE COUNSEL]: Judge, with respect to the question I asked, did she know - - I mean, did he have a temper and she said no. And then my question was, was she aware of the event that he's not a peaceful, law-abiding citizen.
>
> THE COURT: I don't think she said that he was or he wasn't. You can't open your own door. And plus, when was this arrest? I don't believe she said he'd never been arrested. She answered your questions on cross. The State didn't elicit this information.
>
> . . . The objection is sustained based on the current state of the record.
>
> . . . .

THE COURT: . . . For the record, do you have any other questions that might be of this nature that you want to ask this witness outside the jury's presence, either to make a bill or to - -

For the record, did you know that he had been arrested or convicted of resisting arrest?

[WELLS'S MOTHER]: I didn't know about resisting arrest. I heard that there was a domestic situation, but I didn't - - I knew he went to jail but I had never heard about resisting arrest.

THE COURT: And the time period this happened would have been when?

[WELLS'S MOTHER]: Early '90s maybe.

THE COURT: All right. For the record, that would be her answer to - - that would be your answer to her [defense counsel's] question; is that correct?

[WELLS'S MOTHER]: Yes.

THE COURT: Then she has that record. The objection is still sustained based on the time frame of early '90s.

When the jurors re-entered the courtroom, the trial court told them he had sustained the objection and instructed them to disregard the witness's answer.

According to appellant, the trial court should have admitted the evidence because it is relevant and probative "in that it may have made it more likely the jurors would have concluded that the deceased was the aggressor and that [a]ppellant correctly found it necessary to arm himself."

The rules of evidence permit a defendant to offer evidence concerning the victim's character for violence or aggression on two separate theories when the defendant is charged with an assaultive offense. *Ex parte Miller*, 330 S.W.3d

3

610, 618 (Tex. Crim. App. 2009). First, the defendant may offer reputation or opinion testimony, or evidence of specific prior acts of violence by the victim, to show the "reasonableness of defendant's claim of apprehension of danger" from the victim. *Id.* This is called "communicated character" because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not. *Id.* This theory does not invoke rule 404(a)(2) because rule 404 bars character evidence only when offered to prove conduct in conformity, i.e., that the victim acted in conformity with his violent character. *Id.*; *see* Tex. R. Evid. 404.

Nothing in the record shows that appellant was aware that Wells had been arrested in the early 1990s. Accordingly, this was not admissible as "communicated character" evidence. *See Miller*, 330 S.W.3d at 618–19.

A defendant may also offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor. *Id.* at 619. Rule 404(a)(2) is directly applicable to this theory; this use is called "uncommunicated character" evidence because it does not matter if the defendant was aware of the victim's violent character. *Id.*; *see* Tex. R. Evid. 404(a)(2). However, this type of evidence is available only through reputation and opinion testimony under rule 405(a). *Miller*, 330 S.W.3d at 619; *see* Tex. R. Evid. 405(a). Therefore, evidence of Wells's arrest for a possible domestic situation—a specific instance of conduct—was not admissible under this theory either. *See Miller*, 330 S.W.3d at 619–20.

4

Accordingly, we overrule appellant's first point.

## Requested Self-Defense Instruction

In his second point, appellant contends that the trial court abused its discretion by denying his requested instruction on self defense. According to appellant, the evidence of self defense was weak but nevertheless enough to warrant an instruction. That evidence, according to appellant, was that Wells was armed with a knife and was aggressive during the confrontation that led to the stabbing. According to appellant, "[a]lthough no one witnessed him threaten [a]ppellant with the knife, or otherwise display or use it during the confrontation, [a]ppellant believes that the trial court should have erred on the side of caution and granted defense counsel's request."

### Applicable Law

A defendant is entitled to a defensive instruction only if evidence is admitted supporting the defense. Tex. Penal Code Ann. § 2.03(c) (West 2011); *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008). A defense is raised by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. *Shaw*, 243 S.W.3d at 657–58. In determining whether a defense is thus supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven. *Id.* at 658. If a defense is supported by the evidence, then the defendant is entitled to an

5

instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. *Id.* But the evidence must be such that it will support a rational jury finding as to each element of the defense. *Id.*

Appellant asked for instructions under section 9.31 and 9.32 of the penal code, which provide together that a person is justified in using deadly force against another "when and to the degree the actor reasonably believes the force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *See* Tex. Penal Code Ann. §§ 9.31(a), 9.32(a)(1)–(2)(A) (West 2011). Thus, appellant was entitled to a charge on self-defense if evidence was presented which, if believed, showed that appellant reasonably believed his use of deadly force was immediately necessary to protect himself against Wells's use or attempted use of deadly force. *See Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim. App. 2011).

**Evidence**

Two witnesses who were present when appellant stabbed Wells testified about what they saw. One of the witnesses testified that Wells was asleep in his bunk bed at the Presbyterian Night Shelter, and appellant was cleaning around it with a broom. Appellant kept hitting the bed with the broom. Eventually, Wells woke up and was angry; he got up quickly and said he would clean up himself. The two men got into a loud and heated argument while they were about five or six feet apart. After they exchanged insults about each other's mothers, they got

6

closer to each other. Appellant said, "What did you say about my mom," then "rushed over to" Wells, pinned Wells by the neck to the back of the bunk bed with his right hand, and punched Wells in the stomach area as he grabbed him. The witness did not realize appellant had stabbed Wells until he saw the blood.

This witness testified that although Wells was mad when he woke up, he did not "cuss" appellant and that appellant was the one who came closer to Wells when Wells started saying derogatory things about appellant's mother. When asked if he had testified at a prior hearing that it appeared Wells had tried to harm appellant, the witness said that he had not fully understood the question at the prior hearing and that his answer at the prior hearing was based on the aggressiveness of the conversation. He also testified that it was common for people to have weapons in the shelter even though they were not allowed.

In contrast, the other witness said he heard Wells say in a normal voice, "Hey, it's okay, I'll sweep for you, it's okay, I'll sweep for you." When the witness looked up from his bed, he saw that Wells was sitting on the edge of his bed saying this to appellant. According to this witness, Wells

> was sitting on the edge of his bunk and he was facing towards me and that's when [appellant] walked around to the front of his bunk and reached underneath either his pillow or underneath the head of the mattress and he came around the end of his bunk and [Wells] got up to the end of his bunk and they kind of came face-to-face with each other.

The witness did not see what appellant was reaching for under his pillow. He heard "the altercation" start when the two came face to face with each other.

7

Then the witness heard "one of the bunks being pushed and shoved real hard[,] . . . kind of screeching over[,] and I heard [Wells] sa[y], 'Hey, you don't have to punch me,' and that's when [Wells] - - that's when I heard [Wells] say, 'Hey, you - - you SOB, you stabbed me.'" He also saw appellant push or shove Wells so hard he was forced into the bunk bed, which moved backward. He did not recall any cussing, aggressiveness, or arguing between the two.

Both men testified that they were not aware Wells had a knife and never saw one. They likewise did not see appellant with one.

A Fort Worth police officer testified that he went to the hospital after the stabbing, and a surgery tech from the operating room gave him Wells's personal effects, which included a cell phone, wallet, cigarette lighter, the clothes he was wearing, jewelry, and a three to five inch silver lock-blade knife. These were items Wells "had on him" when he entered the hospital. The knife and jewelry were in a separate bag from the other items. The officer did not know where the knife had been before that.

The defense elicited testimony from the investigating detective that it is important to know whether Wells had a knife for "[s]elf-defense issues," but he also said the simple possession of the knife was not important here because of the eyewitness accounts of what had happened.

A firefighter who responded to the stabbing testified that he did not see a knife at the scene. Another witness, who was not an eyewitness to the event, testified that appellant is about 6'2" or 6'3" and around 215 pounds while Wells

8

was about five feet tall, with one arm shorter than the other, and around one hundred sixty or one hundred seventy pounds. The contract pathologist who examined Wells's body testified that he was 5'5" and 148 pounds. An officer who took photographs of appellant after the stabbing testified that he did not have any wounds on him.

Appellant did not testify, nor did any witnesses testify on his behalf. The only evidence regarding Wells's possessing a knife is that one was included with his personal effects collected at the hospital. Despite the testimony of two eyewitnesses, there is no evidence that Wells was displaying the knife or had threatened appellant with it in any way. Likewise, there was no evidence that Wells, who was considerably smaller than appellant, approached appellant aggressively or did anything other than insult appellant's mother.

The use of force is not justified in response to verbal provocation alone. *See* Tex. Penal Code Ann. § 9.31(b); *Hamel v. State*, 916 S.W.2d 491, 494 (Tex. Crim. App. 1996). We conclude and hold that there is no evidence to support a self-defense instruction here and, thus, that the trial court did not abuse its discretion by refusing to give one. We overrule appellant's second point.

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 11, 2013