

NUMBER 13-15-00101-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JAMES SPENCER,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

**On appeal from the 130th District Court
of Matagorda County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

Appellant, James Spencer, appeals his conviction of aggravated assault with a deadly weapon causing serious bodily injury, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a) (West, Westlaw through 2015 R.S.). Appellant received a punishment of six years imprisonment. By one issue, appellant contends that the trial court abused its discretion by failing to give the jury a self-defense instruction. We affirm.

# I.    BACKGROUND

Several of appellant's acquaintances—Paul Stilwell, Jay Howell, and Jared Maxwell—joined appellant for beer at his house on January 22, 2013.  At a certain point in the evening, Maxwell, who according to appellant was severely intoxicated, punched appellant several times.  One of the men broke up a fight that ensued between appellant and Maxwell.  Howell testified that Maxwell was unconscious, and appellant kicked him in the groin and told the men to get Maxwell off his property.  According to Stilwell, he stopped appellant when appellant "stomped [an unconscious Maxwell] in the head a couple times."  Howell stated that Stilwell "dragged" an unconscious Maxwell across the street, where he stayed.  According to Stilwell, appellant went across the street and poured a bucket of water on Maxwell, who did not appear to respond.  Howell testified that he periodically checked to ensure that Maxwell was still breathing, which he was.  Howell testified that he and Stilwell eventually left to get a phone to call 911.

Appellant testified that after Stilwell and Howell left his house, he heard Maxwell shout from across the street that he needed his keys so he could come back to kill appellant.  Appellant stated that he feared that Maxwell would acquire a weapon and that Maxwell was attempting to stand.[1]  However, appellant acknowledged that Maxwell did not actually stand up, and that it just appeared as if Maxwell attempted to get up.  According to appellant, he then went to where Maxwell was lying in order to keep Maxwell there until the police arrived.  Appellant stated that he wanted to knock Maxwell out so that he could not leave and possibly get his gun.

Richard Lewis, who drove by the scene with his wife, testified that he saw a body lying on the ground next to a restaurant.  According to Lewis, the body did not appear

---

[1] Appellant stated that he believed Maxwell owned a gun.

2

bloody and the person, later identified as Maxwell, was not moving and was out cold. Lewis was not too concerned because he believed there were two men attending to Maxwell. However, as he drove away, Lewis noticed that the men left Maxwell lying in the street; Lewis turned the car around to offer assistance. Upon arriving at the restaurant, Lewis saw appellant beating Maxwell, who was unconscious during the beating. According to Lewis, Maxwell was barely breathing. Evidence was presented that Maxwell suffered lacerations to his head, he had discoloration and bruising around the eyes, eyes swollen almost shut, bleeding within one of his eyes, and fractures of the face.

Appellant requested for the trial court to instruct the jury on the law of self-defense in the jury charge. The trial court denied that request. The jury found appellant guilty, and this appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

A trial court's decision to deny a defensive issue in a jury charge is reviewed for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). When reviewing a trial court's decision to deny a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). "Our first duty in analyzing a jury-charge issue is to decide whether error exists. Then, if we find error, we analyze that error for harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

A trial court is required to submit a jury charge that sets out the law "applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2015 R.S.). The trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications when they are raised by the evidence and requested by the defendant. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). "A defendant is

3

entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.) (quoting *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001)). "Raised by the evidence" means "there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that th[e] element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). Defensive issues may be raised by the testimony of any witness. *VanBrackle v. State*, 179 S.W.3d 708, 712–13 (Tex. App.—Austin 2005, no pet.).

Texas Penal Code section 9.31 provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West, Westlaw through 2015 R.S.). Section 9.31(b) sets out a list of exceptions where the use of force is not justified, including "in response to verbal provocation alone[.]" *Id.* § 9.31(b).

### III.    CHARGE ERROR

Appellant argues that the trial court was required to provide the jury with a self-defense instruction because the evidence established that Maxwell threatened to kill appellant and when Maxwell was across the street, appellant feared that Maxwell would get a weapon and attack him.

Appellant cites *Hamel v. State* for support. In *Hamel v. State*, 916 S.W.2d 491, 492 (Tex. Crim. App. 1996), the court of criminal appeals held that the trial court erred by not giving the jury an instruction on defense of a third person citing evidence that: (1) the "victim" had threatened to kill the appellant's father; (2) the "victim" had stated he had a gun in his car, walked toward his car that was parked six to eight feet away from the front

4

door, and attempted to get something from his car; (3) the appellant stopped attacking the "victim" when the "victim" stopped moving toward his car; and (4) prior to the incident, the "victim" had beaten the appellant's sister, had "destroyed most of the things in the house" where the altercation took place, informed the appellant that he had been in prison because he had shot a man, and had been convicted of being a felon in possession of a firearm. *Id.*

Appellant argues that because there was evidence that Maxwell attempted to stand up, his threat that he would kill appellant went beyond mere verbal provocation. Thus, according to appellant, his testimony that he believed that Maxwell was going to return and kill him raised the self-defense issue, "especially coupled with appellant's knowledge that Maxwell owned a gun, had just broken appellant's nose and teeth for no reason, had a reputation for violence, and was intoxicated."

The State responds that self-defense is constrained to situations where the actor "reasonably" believes that "the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Thus, according to the State, the mere fact that Maxwell may have stood up after he stated he wanted to kill appellant

> does not create a threat, much less an immediate one, particularly when Maxwell was not in [appellant's] immediate presence at that time and made no concurrent verbal threat or threatening physical move toward [appellant]—nor was there any evidence of circumstances that would prevent [appellant] from retreating before Maxwell could find his keys, get a weapon, and return to inflict the damage that [appellant] claims to have feared.

This case is distinguishable from *Hamel* because in *Hamel*, (1) the victim's alleged verbal threat did not stand alone; (2) the victim had moved toward his car and the defendant believed the victim had a weapon in the car; (3) the appellant's sister told him that the victim was carrying a gun; (4) the victim told the appellant that he had a weapon in his car to shoot the appellant's father; and (5) the victim was in close proximity to the

5

car and the weapon. *See Hamel*, 916 S.W.2d at 492. In contrast, here, (1) there was no evidence that Maxwell moved toward any vehicle or other object that contained a weapon; (2) there was no evidence that appellant believed that a weapon was immediately accessible to Maxwell; (3) Maxwell did not have his keys to his home where a weapon may have been; and (4) there was no evidence that Maxwell was so close to any weapon that he could have used before appellant could have fled. We agree with the State that in *Hamel*, the verbal threat of force was accompanied by acts that the defendant reasonably believed put him in apparent danger. Here, there is no evidence that appellant was in immediate danger from Maxwell at the moment that appellant beat Maxwell for the second time. *See id.*

And, even if Maxwell attempted to stand, he was across the street from appellant, and therefore, his act of standing alone could not have been an immediate threat to appellant, especially given the fact that there is no evidence that Maxwell had immediate access to any weapons. Even under appellant's description of the events, Maxwell was across the street from appellant when he attempted to stand, and Maxwell never approached appellant; instead, appellant walked across the street and confronted and beat Maxwell. In fact, appellant testified that he went across the street to "keep [Maxwell] from leaving." Accordingly, we cannot conclude that there was evidence that Maxwell took any physical actions against appellant that would have warranted appellant believing that force was immediately necessary to protect himself from Maxwell. *See* TEX. PENAL CODE ANN. § 9.31(a). Thus, the evidence at most shows that Maxwell made verbal threats to appellant, which, under section 9.31(b), does not justify the use of force. *See id.* § 9.31(b). Finding no error, we overrule appellant's sole issue.[2]

---

[2] Appellant argues that the State conceded that the evidence supported a self-defense instruction.

## IV.    CONCLUSION

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this the
19th day of May, 2016.

---

We have reviewed the record, and we find no such concession.