Opinion filed December 13,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-11-00098-CR

                                                    __________

 

                           TIMOTHY
PHILIP MORENO, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 104th District Court

                                                            Taylor
County, Texas

                                                    Trial
Court Cause No. 17425B

 



 

M
E M O R A N D U M   O P I N I O N

            Timothy
Philip Moreno was charged with the murder of Francisco Javier Garza in two
paragraphs. The jury found Moreno guilty of murder as alleged in the second
paragraph of the indictment: Moreno, intentionally and knowingly, with the
intent to cause serious bodily injury to an individual, Garza, committed an act
clearly dangerous to human life—shooting him in the head with a deadly weapon,
a firearm—that caused the death of Garza.  The jury assessed his punishment at
fifty years in prison.  Moreno appeals.  We affirm.

            In
four issues, appellant argues that (1) the trial court erred in allowing the
testimony of Edgar Delapaz; (2) the trial court erred in allowing the testimony
of Patricia Garcia concerning prior assaults by appellant against her; (3) the
trial court erred in preventing appellant from arguing that the reasonableness
of his conduct should have been viewed as appellant perceived the situation; and
(4) the trial court erred in instructing the jury that the law of self-defense
may be applied to a murder charge but not to a manslaughter charge.

Background
Facts

            The
home of appellant and his mother had been attacked by vandals.  The mother
moved to a motel, and appellant was staying at the home of his girlfriend,
Patricia.  Appellant had been living there a week before the incident.  Appellant
was sixteen years old at the time.

            Appellant
and Patricia began drinking Joose, a malt liquor beverage, early in the day;
they continued to drink until the early morning of April 18, 2009.  Patricia
said she received a call from Edgar Delapaz; however, Delapaz testified that
she called him.  Because of the call, Patricia and appellant began arguing. 
Patricia remembered that Edgar and appellant talked on the phone and that
appellant wanted to fight Edgar.  Eventually, both calmed down and “were going
to catch a cool.”  Patricia explained that meant that they were not going be
friends but that they were not going to have a problem with each other.

            Patricia
said that, later that night, appellant talked about how he wanted to fight
Garza.  Patricia and Garza had dated and had a sexual relationship before she
began going with appellant.  Appellant told her to call Garza.  Because
appellant did not have any minutes on his phone, she sent a text message to
Garza.  According to Patricia, Garza and appellant began texting back and forth
concerning where they would meet.  They sent text messages back and forth for
about an hour.

            Sometime
later, Patricia heard loud music outside and went to see if it was Garza
driving by her house.  Appellant followed her outside.  They saw Garza do a U-turn
and come back.  Patricia said that appellant ran back in the house, got his gun,
and came back out.  She claimed that she went back inside to find some clothes
to put on.  Patricia said that she did not see appellant shooting at Garza but
that she heard the shooting.  When she went outside again, she saw that the
back window of Garza’s blue Ford Explorer was “busted out.”  She also saw Garza
lying in the street.  Patricia said that she did not see Garza with a gun nor
did she see his passenger, Gilbert Valenzuela, with a gun.  When the passenger
got out of the car, he took off running.  Appellant left in Garza’s Explorer.

            Patricia’s
mother said that the loud music woke her son, who woke her.  She then heard a
few gunshots.  She looked through a window and saw Garza’s Explorer with its
lights on.  By the time she went outside, the car was gone.

            Garza’s
passenger, Gilbert, testified that Garza was his uncle and that he lived with
Garza at that time.  He was aware that Garza had received text messages from
appellant that night.  Gilbert did not know the content of the text messages,
but he could tell that Garza was angry about them.  He was with Garza when they
went to Patricia’s house around 4:00 a.m.  Gilbert thought that Garza and
appellant were going to fight.  He did not know that appellant had a gun.  He
claimed that neither he nor Garza had a gun.   Gilbert said that Garza was
standing outside the Explorer on the driver’s side and was texting when
Patricia and appellant came out of the house.  Garza was standing between the
open door and the body of the Explorer.

            According
to Gilbert, Patricia came out first, and then appellant came out running and
shooting.  Gilbert looked back, saw the window shot out, became scared, opened
the door, and ran toward a fence.  The last time he saw his uncle, appellant
was near his uncle.  Gilbert saw the Explorer being driven away, and he thought
that his uncle was in it.  During cross-examination, Gilbert said that he had
not been with Garza during the entire night but that Garza had drunk a few
beers.  Gilbert said that he was only fourteen years of age and that he had not
been drinking. He further said that he did not know Jennifer Carrion or Juan Angel
Narvaez and that neither had talked to Garza that night.

            Officers
Mary Guitar and Damien Hutchison with the Abilene Police Department arrived at
the scene at 5:40 a.m.  Patricia was trying to do CPR on the victim, and she
was covered in blood.  The body was near the middle of the street.  Patricia
told Officer Guitar that the victim was an ex-boyfriend.   Patricia’s mother
was also standing off to one side.  Someone named Carmen told Officer Guitar
that appellant had fired the shots and that Patricia had had relationships with
both Garza and appellant.

            Daniel
Gonzales testified that appellant is his nephew.  Gonzales lived with his
sister in Merkel, and appellant came to her house that night, driving a blue Ford
Explorer.  Daniel remembered seeing the back window bashed in and another
window broken.  Appellant was “all shaky and scared,” and Daniel asked him what
was wrong.  Appellant told Daniel that “he shot a guy” in Abilene and that it
was the same person who had beaten him up in the past.  Daniel said that he
noticed a rifle in the Explorer, but appellant would not tell him where he got
the rifle.  Appellant told Daniel that he did not mean to kill Garza; he was
just trying to scare him off.  Daniel told him to go back to Abilene and turn
himself in.

            Appellant
did not go directly back to Abilene, but he did turn himself in later that
day.  The Explorer was found by the police in an abandoned old barn located
approximately four miles from Merkel.  Both license plates had been removed,
and it appeared that someone had wiped the Explorer down to remove blood
splatters.

            Officers
found four .22 caliber shell casings in the street and live .22 caliber rounds
lying on the floor in Patricia’s house.  A forensic specialist with the Abilene
Police Department noted that one bullet hole was in the left corner on the
driver’s side, just to the right of the taillight, and that another bullet hole
was in the back end of the Ford Explorer.  Dr. Nizam Peerwani, a forensic
pathologist, performed the autopsy.  He testified that Garza had received one
gunshot wound to the right side of his right thigh, indicating that the shooter
was on the right side, slightly in front of Garza.  He then described the
second gunshot wound that was just above Garza’s right eyebrow; the bullet
entered and went from right to left and slightly downwards, indicating that the
shooter had to be in the front.  According to Dr. Peerwani, the wound to the
thigh would have been very painful; Garza would have collapsed and would not
have been able to run.  But Garza died from the wound to his head.  Dr.
Peerwani found the bullet in Garza’s thigh and the bullet in his skull.

            Jennifer
and Angel were witnesses for appellant.  Jennifer lived with Patricia and her
mother.  She testified that she talked to Garza about 4:00 a.m.; she had sent a
text to Garza because she had heard of the confrontation between him and
appellant.  She claimed that she told Garza not to go to Patricia’s house
because she knew that appellant was drunk and had a gun.  Although she did not
see Garza with a gun, Garza told her that “he had something for [appellant].”
Jennifer interpreted the statement to mean that Garza had a gun.  During
cross-examination by the State, Jennifer admitted that she never once mentioned
in her statement to the police that she had seen Garza and visited with him
that morning.

            Angel
said that he had been drinking with Jennifer that night and that he had also
visited with Garza around three or four o’clock that morning.  Angel went out
to the curb to visit with Garza, who was in his car.  Angel talked with him for
about twenty minutes.  Angel said that he tried to calm Garza down and that
Garza had shown him a black pistol, pulling it from under the driver’s seat. 
After Garza left, Angel called appellant and told him that Garza was coming and
that he had a gun.  Angel also admitted that he had not mentioned in his
statement to the police that he had visited with the victim that morning. 
Neither Jennifer nor Angel mentioned seeing Gilbert with Garza.

            Appellant
testified that he and Patricia started drinking Joose early and continued to
drink throughout the night.  He said that a friend, Feto, brought him the rifle
and that he kept it under the bed.  He stated that he and Patricia argued about
his seeing a girl who was Patricia’s cousin.  Patricia bit him and hit him.  He
hit her back, and he admitted that he had hit Patricia before.  He acknowledged
that his assaults on Patricia had caused problems with Garza.

            Appellant
said that Angel had called him, telling him that Garza was coming and that he
had a gun.  Appellant claimed that he did not have a gun when Patricia first
went outside to see if it was Garza playing the loud music.  As Garza made a U-turn,
appellant saw that there were two people in the car.  He ran back in the house
to get the gun from under the bed.  When he returned, he saw the two getting
out of the Ford Explorer.  He claimed he saw Gilbert with a gun and said that
was when he started shooting.  Gilbert ran off, and Garza was coming around the
car.  Appellant claimed that he was shooting from the hip just to scare Garza. 
He thought he only fired four times before the gun jammed.  He panicked, took
the rifle with him, and left in Garza’s Explorer to go to his aunt’s house in
Merkel.

            Appellant
testified that he sawed up the rifle with a wood saw and destroyed it.  He
admitted that he knew there was a thirty-round clip in Patricia’s house that
fit the rifle.   Appellant agreed with the prosecutor that the evidence showed
that one shot hit the tail of the Explorer, one shot went through the back
window and out the back side window, one shot hit Garza in the thigh, and the
fourth shot hit Garza in the head.  The prosecutor then asked him if his
testimony was that he was shooting at Gilbert.  Appellant said that he was
shooting that way, but he did not hit Gilbert.

            Appellant
said that two men named Adam and Andrew followed him to where he hid the
Explorer in the abandoned barn; however, he did not know their last names.  He
claimed that he talked to them before he left his aunt’s house.  He also
claimed that they wiped the Explorer down and that they took the stereo.  When
asked how the two men happened to help him, appellant said that Angel had
provided them.  Adam and Andrew then gave appellant a ride back to Abilene
where he later turned himself in to the police.




 

Standard
of Review for Appellant’s First Two Issues

            A
trial court’s decision to admit or exclude evidence is reviewed under an abuse
of discretion standard.  McDonald v. State, 179 S.W.3d 571, 576 (Tex.
Crim. App. 2005).  The trial court’s ruling will not be reversed on appeal
absent a clear abuse of discretion.  Id.  An abuse of discretion occurs
when “its decision is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree.”  Id.  The test for abuse of
discretion is whether the trial court acted without reference to any guiding
rules or principles.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238 (Tex. 1985).

Admission
of Evidence Issues

            Delapaz
began his testimony by stating that he was eighteen years old at the time of
the events on April 18, 2009.  When the State asked questions concerning a
telephone call he received from Patricia that night, appellant objected that
the subject had no relevance to the death of Garza and that the testimony would
be prejudicial.  A hearing was held outside the presence of the jury; the trial
court overruled appellant’s objection.  Before the jury, Delapaz said only the
following about the telephone conversation he had with appellant:

A. 
Just telling me that he thought -- somebody had told him I was talking s--t
about him and for me to go over there, and who I was with, that he was -- he
wasn’t -- he was no bitch, and that’s when I said -- I told him, I’m not a
bitch either, we don’t know each other, I don’t have no problems with you, I
never said anything about you.  That’s when he said that he doesn’t give a f--k. 
He’s f----d up.  He doesn’t care who I take over there, and after that I just
told him, I’ll be -- I said, Let me find a ride and I’ll be there in a minute,
and I hung up the phone after that.

 

Q. 
What did you do?

 

A. 
Nothing.  I went home.

 

During
cross-examination, appellant’s counsel asked Delapaz what appellant meant when
appellant said he was “f----d up”: “Do you think that meant that he had been
drinking?” Delapaz said it meant appellant had been drinking or had been using
drugs, but Delapaz did not know which he meant.  Delapaz said that he did not
see appellant that night.

            When
Patricia began discussing the telephone call with Delapaz, appellant objected
again that the conversation with Delapaz was irrelevant and prejudicial.  The trial
court overruled the objection.  There was a brief mention of appellant’s
challenge to a fight with Delapaz by Patricia in her testimony; however, it was
immediately followed by Patricia’s statement that Delapaz and appellant had
calmed down, were “cool” with each other, and did not have a problem with each
other.  The testimony was admissible because it was relevant to appellant’s
state of mind.  See Tex. Code
Crim. Proc. Ann. art. 38.36(a) (West 2005) (all relevant circumstances
to show the condition of the mind of the accused at the time of the offense). 
It demonstrated that appellant was intoxicated and angry about Patricia’s
talking and texting with former boyfriends that night.  The evidence provided
insight into appellant’s motive—jealousy—as well as his state of mind during
that night.  The evidence was not unfairly prejudicial.  See Rogers
v. State, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999) (discussion of unfair
prejudice); Lopez v. State, 314 S.W.3d 54, 62 (Tex. App.—San Antonio
2010, pet. ref’d).  We cannot say that the trial court abused its discretion in
finding that the testimony was admissible.  Appellant’s first issue is
overruled.

            In
appellant’s second issue, he argues that the trial court erred in admitting
Patricia’s testimony of appellant’s prior bad acts against her because the bad
acts were not included in the State’s response to his Tex. R. Evid. 404(b) request.  During cross-examination,
appellant reviewed with her the events that occurred after she and appellant
finished talking with Delapaz, e.g., that they had an argument, that she hit or
bit appellant, that they continued drinking, that they later heard the loud
music and went out to see that it was Garza driving past, and that Patricia did
not see Garza with a gun.  Appellant then asked if the police had asked her
whether she had seen appellant that night.  Patricia responded that she lied to
the police.  That response was early in the cross-examination.  Appellant then
obtained her admission that there were other inconsistent statements in her
testimony at trial.  She was consistent, however, in stating that she did not
see Garza or Gilbert with a gun.

            After
the cross-examination, the State requested a hearing outside the presence of
the jury.  The State wanted to question Patricia about why she initially lied
to the police by stating that she had not seen appellant.  In response,
appellant argued that there was no need to explain why she lied because she
admitted that she lied to the police.  The trial court overruled appellant’s
objection.  The State asserts that, because appellant had attacked her
credibility a number of times, it was reasonable for the court to allow the
State to rehabilitate her, citing Prible v. State, 175 S.W.3d 724, 731
(Tex. Crim. App. 2005) (extraneous offense evidence admissible to rehabilitate
an impeached witness).  An appellate court must review the trial court’s ruling
in light of what was before the trial court at the time the ruling was made.  Willover
v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); Weatherred v. State,
15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Before
the jury, Patricia briefly testified that she lied to the police because she
was scared of appellant.  They fought a lot, and he would hit her; it was
normal for them to fight.  She admitted that she bit and hit him during that
night.  She also admitted that Garza did not like it when appellant hit her. 
After reviewing the record, we cannot say that the trial court abused its
discretion in allowing the brief testimony where Patricia claimed she lied
because she was afraid of appellant.  The trial court’s ruling was “within the
zone of reasonable disagreement.”

            Even
if the trial court erred in allowing the testimony of Delapaz and Patricia,
there was no harm.  The errors would have been nonconstitutional errors;
therefore, the analysis is under Tex. R.
App. P. 44.2(b).  When evaluating harm from nonconstitutional error
flowing from the exclusion or admission of relevant evidence, we examine the
record as a whole.  If we are fairly assured that the error did not influence
the jury or had but a slight effect, we conclude that the error was harmless.  Ray
v. State, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005); Morales v. State,
32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  As appellant points out in his
brief, there was ample evidence that it was normal for Patricia and appellant
to fight; she was not so afraid of appellant that she did not fight with or hit
him.  It is extremely doubtful that the jury gave much credence to Patricia’s
testimony concerning why she lied to police.  And Delapaz only stated that
appellant told him that “somebody had told [appellant] [Delapaz] was talking s--t
about him” and that he wanted Delapaz to come over to talk about it.  The
testimony did not affect appellant’s substantial rights.  Appellant’s second
issue is overruled.

Self-Defense
Standard

            In
his third issue, appellant points out that, during argument, his counsel
attempted to argue as follows:

            [Appellant
is] 16 years old and he’s scared.  What happens if those guys with guns get out
and he’s standing by the house or he’s in the front -- or he’s in that door and
they start shooting at him?  Look at it through his eyes, the eyes of a
16-year-old boy.

 

            The
State objected on the ground that this line of argument went against the jury
charge.  The State pointed out that the jury had to “consider a reasonable
person standard with the facts that were known to the accused.”  The trial court
sustained the objection.

            The
charge contained detailed instructions requiring that, under the law of
self-defense, the actor “reasonably believes that such deadly force is
immediately necessary to protect oneself against the other person’s use or
attempted use of unlawful deadly force.”  The application paragraphs also
required a reasonable belief by appellant:

Therefore,
with regard to Paragraph Two in the indictment, if you believe from the
evidence that Timothy Philip Moreno would be justified in using deadly force
to-wit: by shooting Franciso Javier Garza in the head with a firearm, an act
clearly dangerous to human life, while intending to cause serious bodily injury
because Timothy Philip Moreno reasonably believed the use of deadly force was
immediately necessary to protect himself against Francisco Javier Garza’s or
Gilbert Valenzuela’s use or attempted use of unlawful deadly force, then you
will find the Defendant not guilty of Murder as alleged in Paragraph Two of the
indictment.

 

If
you find from the evidence beyond a reasonable doubt that at the time and place
in question the Defendant did not reasonably believe that he was in danger of
death or serious bodily injury, or that Defendant, under the circumstances as viewed
by him from his standpoint at the time, did not reasonably believe that the
degree of force actually used by him was immediately necessary to protect
himself against Francisco Javier Garza’s or Gilbert Valenzuela’s use or
attempted use of unlawful deadly force, then you should find against the
Defendant on the issue of self-defense.

 

            Appellant
contends that he was denied the opportunity to argue that the jury should view
matters as appellant viewed them at the time he acted, that being denied his
jury argument amounted to a denial of the right to counsel, that the error was
of constitutional magnitude, and that the denial effectively negated the
evidence that appellant was afraid and thought that Garza was armed.  Appellant
mischaracterizes the State’s objection and the court’s ruling.  The State
objected to make clear that the jury should view matters as a reasonable and
prudent person, under the same or similar circumstances as appellant, would
have viewed them.  They should not be viewed “through the eyes” of this
particular sixteen-year-old boy.  Appellant was incorrect in his statement to
the trial court that the jury “[had] to consider the things the way he saw it,
what’s reasonable for him.”

            It
is well settled that self-defense is viewed from a reasonable-person standard. 
The test assumes that a defendant may act on appearances as viewed from his
standpoint, but “the test also assumes the ‘ordinary prudent man test of tort
law.’”  Werner v. State, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986). 
The issue in Hamel v. State, 916 S.W.2d 491 (Tex. Crim. App 1996), cited
by appellant, was whether the trial court erred in denying appellant’s request
for jury instructions on self-defense and defense of a third person.  The Hamel
court noted that Werner involved the propriety of the exclusion of
evidence relating to the Holocaust syndrome, not a jury instruction issue.  The
court stated, “Werner should not be interpreted to preclude a
self-defense instruction where the defendant reasonably perceives that he is in
danger, even though that perception may be incorrect.”  916 S.W.2d at 493.  The
Hamel court held that the trial court erred in denying the instructions
on self-defense.  The term “reasonably believes” in Section 9.32 of the Texas
Penal Code[1]
encompasses the traditional holding that a suspect is justified in defending
against danger as he “reasonably” apprehends it.  Id.

            More
recently, the Court of Criminal Appeals again reminded us that a belief “is a
‘reasonable’ one” if it “‘would be held by an ordinary and prudent man in the
same circumstances as the actor.’”  Mays v. State, 318 S.W.3d 368, 383
(Tex. Crim. App. 2010) (quoting Tex.
Penal Code Ann. § 1.07(a)(42) (West 2011)).  “Reasonable belief” is
defined by the Penal Code as “a belief that would be held by an ordinary and
prudent man in the same circumstances as the actor.”  Section 1.07(a)(42).  The
law examines “reasonableness” from the perspective of an ordinary and prudent
person.

            During
the trial, the jury was told that, at the time of the offense, appellant was
sixteen, Patricia was fifteen, Delapaz was eighteen, Gilbert was fourteen, and
the victim was nineteen.  The jury was well aware of the ages of the teenagers
who were involved that night.  Counsel for appellant began his closing argument
by stating that this was a tragic case “about kids doing things that kids
shouldn’t be doing.”  Appellant’s counsel carefully reviewed the evidence in a
light that supported appellant’s self-defense argument, including that Angel
called and told him that Garza had a gun; that appellant was “already scared”
when he saw that there were two people in the car, not just one; and that
appellant said he saw Gilbert with a gun.  After the objection and ruling
discussed herein, which occurred midway in his argument, appellant’s counsel
argued that appellant did not have to retreat because he was living at
Patricia’s house, that appellant was reasonable in believing his friend Angel,
that appellant thought he saw a gun, and that the jury charge required only a perceived
threat.

            The
trial court did not err in sustaining the State’s objection.  A review of the
record reveals that appellant was not denied any proper argument or his right
to counsel.  There would have been no harm even if the court had erred, which it
did not.  Appellant’s third issue is overruled.

Self-Defense
and Manslaughter

            In
appellant’s fourth and final issue, he argues that the trial court erred in
stating in the jury charge that the law of self-defense does not apply to a
manslaughter charge.  Counsel moved to strike that sentence, but the trial
court overruled his objection.

            When
an appellant claims jury charge error, the appellate court must first determine
whether the charge was erroneous.  If there was an error, the court then
determines whether the error was harmful to the accused. Olivas v. State,
202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985).  Appellant timely objected to the
charge; therefore, if there was an error, we may affirm only if no harm
resulted to the accused.  Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim.
App. 1986).

            Appellant
relies on Jordan v. State, 782 S.W.2d 524, 527 (Tex. App.—Houston [14th
Dist.] 1989, pet. ref’d); Withers v. State, 994 S.W.2d 742, 745–46 (Tex.
App.—Corpus Christi 1999, pet. ref’d); and VanBrackle v. State, 179
S.W.3d 708, 714–15 (Tex. App.—Austin 2005, no pet.).  In Jordan, there
was evidence that Jordan acted intentionally: he grabbed his pistol, cocked it,
got out of his cab, and pointed the gun at Parker’s chest.  However, there was
also evidence of recklessness: his actions with the gun, the men arguing and
shoving, and Jordan’s testimony that he did not know whether he pulled the
trigger.  The Jordan court held that the jury charge should have applied
self-defense to involuntary manslaughter.

              In
Withers, the defendant was convicted by a jury of injury to a child.  See
Tex. Penal Code Ann. § 22.04
(West Supp. 2012).  On appeal, Withers challenged the trial court’s failure to
include jury instructions on self-defense.  Withers was a diagnostician at the
school, working with “special education” children.  Hector Vasquez was twelve
years old at the time and a special education student.  Although mentally
retarded and physically handicapped, Hector had significant upper body
strength, particularly when emotionally excited.  Hector got into an argument
with a fellow student.  Withers saw Hector strike the other student a hard
blow, and she attempted to intervene.  There was a struggle, and Hector ended
up, at least briefly, facedown on the floor while Withers kept pressure on his
back to keep him down for a few moments.  Based on the evidence, the appellate
court reversed, finding that Withers was entitled to a jury instruction on
self-defense.

            In VanBrackle,
Johnnie Weston testified that the defendant confronted him in front of a
store.  The defendant was brandishing a pistol and demanding that Weston pay
him money.  Weston said that he told appellant that he did not owe the money
and that he then grabbed the barrel of the pistol.  They began scuffling over
the gun, and a third person began hitting Weston’s hand, which was holding the
gun, with a two-by-four.  Weston said that he released his grip on the pistol
and fell facedown on the ground; appellant then shot him in the back.  A number
of witnesses supported Weston’s version; other witnesses said they saw Weston
reach into his pocket and pull out a gun.  Appellant was convicted of attempted
murder and aggravated assault.  The appellate court reversed and remanded,
holding that the trial court erred by refusing to instruct the jury on the law
of self-defense.

            The
State points out that Texas courts have often concluded that a defendant who
claims to have acted in self-defense (involving intentional conduct that is
justified) cannot also claim to have acted recklessly.[2] 
For that proposition, the State cited Nevarez v. State, 270 S.W.3d 691,
695 (Tex. App.—Amarillo 2008, no pet.); Martinez v. State, 16 S.W.3d
845, 848 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d); and Avila v.
State, 954 S.W.2d 830, 843 (Tex. App.—El Paso 1997, pet. ref’d).  The State
concedes that, under certain circumstances, a defendant is entitled to an
instruction on self-defense where a charge requires the mental state of
recklessness.  Alonzo v. State, 353 S.W.3d 778 (Tex. Crim. App. 2011); Jordan,
782 S.W.2d at 526–27.  The State asserts, however, that self-defense is not
applicable to counter a manslaughter charge when the evidence shows the
defendant was acting intentionally in self-defense, not merely recklessly.  

            The
State relies on Alonzo for its asserted proposition.  The Alonzo court
distinguished Nevarez, Martinez, and Avila as follows:

The
cases cited by the Court of Appeals for the proposition that “Texas courts have
routinely noted that an individual cannot recklessly act in self-defense” all
dealt with murder defendants who argued self-defense and then requested that
the jury be charged with the lesser-included offense of manslaughter.  The very
reason for denying the manslaughter charges was that the defendants’ evidence
was that in committing the homicide they acted intentionally in self-defense,
not merely recklessly.  We do not call these cases into question. 

 

Alonzo,
353 S.W.3d at 782.  The majority in Alonzo noted that, in all three
cases, the defendant in a murder trial admitted purposefulness of actions that
led to death and argued self-defense; thus, he was not also entitled to a
manslaughter charge.  Id. at 780 n.8, 782.

            But
in this case, the trial court included manslaughter in the jury charge.  The
trial court found that the evidence raised the application of self-defense to
the murder charges.  Because the trial court also included manslaughter in the
jury charge, we read Alonzo to require that it should have stated that
self-defense did apply to manslaughter.  Both the majority and the concurring
opinions noted that the legislature has codified the doctrine of self-defense. 
Both pointed out that there is nothing in the self-defense statute that limits
self-defense to offenses with an intentional or knowing culpable mental state;
therefore, a defendant is entitled to jury instructions on this statutory
defense when it is raised by the evidence.  Id. at 783–84.  The trial
court erred in refusing to include an instruction that the law of self-defense
may also be applied to the manslaughter charge.

            Having
found that the trial court erred, we must determine whether appellant was
harmed by the error.  The applicable statutory standard is whether “the error
appearing from the record was calculated to injure the rights of defendant.”  Tex. Code Crim. Proc. Ann. art. 36.19
(West 2006); Trevino v. State, 100 S.W.3d 232, 242 (Tex. Crim. App.
2003).  Earlier, we quoted application paragraphs relating to the second paragraph
of the indictment.  The jury rejected appellant’s self-defense justification
and found that appellant intentionally and knowingly, with the intent to cause
serious bodily injury to Garza, committed an act clearly dangerous to human
life: shooting him in the head with a deadly weapon, thereby causing the death
of Garza.

            The
evidence fully supported the jury finding that appellant fired the rifle “with
intent to cause serious bodily injury.”  There was testimony by Gilbert that
appellant ran toward Garza, firing the rifle four times, and that Gilbert last
saw appellant very close to Garza.  The police found the four .22 caliber
casings in the street.  Dr. Peerwani testified that the shot to Garza’s thigh
would have made him collapse and unable to run.  The shot to his head caused
Garza’s death.  The shot to Garza’s head was on a slightly downward trajectory,
indicating that Garza was falling or that appellant shot Garza after he fell. 
Appellant testified that he intended to shoot the gun but that he only wanted
to scare Garza and Gilbert.  He remembered firing the rifle four times before
it jammed.

            If
the jury had convicted appellant of manslaughter, the omission of the
application of self-defense to manslaughter might have been harmful.  In both Alonzo
and Jordan, the defendant was acquitted of murder and convicted of
manslaughter.  Because the jury convicted appellant of murder, the trial
court’s charge error is harmless in this case.  It is very unlikely that this
same jury would have unanimously availed itself of a self-defense option for
the manslaughter charge.  To do so would have required the jury to first
unanimously acquit appellant of the greater murder charge and then unanimously
accept appellant’s assertion that he intentionally acted in self-defense and
should not be found guilty of manslaughter.  Once the jury convicted appellant
of the greater offense of murder, it had no reason to then consider whether
appellant might be guilty of the lesser included offense of manslaughter under
the trial court’s instructions.  We conclude that any error in refusing to
instruct the jury on self-defense as to the lesser included manslaughter
offense was entirely harmless.  Appellant’s fourth issue is overruled.

This
Court’s Ruling

            The
judgment of the trial court is affirmed.

            

                                                                                    

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

December 13, 2012

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Willson, J.









[1]Tex. Penal Code Ann. § 9.32 (West 2011).

 





[2]A person acts recklessly if he is “aware of but
consciously disregards a substantial and unjustifiable risk.”  Tex. Penal Code Ann. § 6.03(c) (West
2011).  The assertion of self-defense is an assertion that his conduct was
justified.  See Id. §§ 9.02, 9.31, 9.32.