# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00302-CR

**Sergio Martinez Ramos, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 11-322-K277, HONORABLE JAMES E. MORGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sergio Martinez Ramos was indicted for three offenses—evading arrest or detention in a motor vehicle, aggravated assault against a public servant, and driving while intoxicated (third offense or more)—and he was alleged to have used or exhibited a deadly weapon in committing each of these offenses. He pleaded guilty to evading arrest or detention, and the jury convicted him of the DWI and aggravated assault counts, making the deadly-weapon finding for each of the three offenses. The jury assessed prison terms of ten years each for evading arrest and DWI and fifteen years for aggravated assault. The trial court ordered the sentences to run concurrently. Appellant raises four issues on appeal. He contends that the trial court erred by denying his motion to suppress evidence, by excluding his expert witness's testimony, and by rejecting his proposed jury charges. He also contends that the evidence is insufficient to prove that he knowingly and intentionally threatened the public servant. We will affirm the judgment.

**BACKGROUND**

A witness testified that he saw a large sport-utility vehicle driving erratically near Coupland, Texas. He said that the vehicle ran off the road into a corn field, then returned across the road into oncoming traffic before correcting into the proper lane. He testified that the vehicle did a U-turn then almost ran head-first into an 18-wheeler, whose driver avoided collision by hitting his brakes so hard that its tires smoked. The witness called 911 and reported the erratically driven SUV moving toward Taylor.

Taylor police officers followed the Ford Expedition, later revealed to be driven by appellant, through Taylor with overhead flashing lights, sirens, and cameras activated. At one point, appellant pulled over and stopped. A police officer got out of the trailing car, but before he reached the lead police car, appellant began driving again. Appellant drifted toward oncoming traffic occasionally as he drove toward Hutto, about nine miles west of Taylor. Although the pursuit was at times within the speed limit, the police at other times had to accelerate to around ninety miles per hour to attempt to keep pace.

In Hutto, appellant had three confrontations with a growing number of peace officers that reached nearly twenty, with officers from Williamson County, Hutto, and the Department of Public Safety joining the Taylor police. At one point, appellant drove down railroad tracks and the officers momentarily lost contact with him. The first encounter occurred at an automotive shop where appellant parked between two other vehicles with his vehicle's lights and motor off. Uniformed peace officers laid down spike strips, ordered appellant to raise his hands and get out of his vehicle, and approached the car from the front and the rear. When officers broke a window in the Expedition in order to extract appellant, he drove away rapidly, narrowly missing an officer

2

who was near the front of the Expedition. Officers fired four shots at appellant, and the spike strips pierced his tires, which began to deflate.

The pursuit then led into a residential neighborhood where peace officers tried to barricade the streets. Slowing because of the flat tires, appellant went around the barricading police cars through front yards while officers shot at the vehicle. Appellant drove straight at DPS Trooper Cody Pahl as he stepped out of his vehicle. Pahl ordered appellant to stop—to no avail—then fired several shots at him. The Expedition eventually had thirty-two bullet holes.

The pursuit ended when appellant stopped in the parking lot of the Hutto High School stadium where a soccer game was being played. Police pulled appellant out of his vehicle and handcuffed him. Suffering from bullet wounds to his face, arm, hand, and knee, appellant was taken by emergency medical services workers to a hospital.

An EMS worker testified that he noticed the smell of alcohol on appellant's breath during the trip to the hospital. A test of a appellant's blood sample taken in the emergency room showed that his blood-alcohol concentration was between .244 and .296 grams per 100 milliliters—at least three times the legal limit of .08. Appellant's vehicle contained a twelve-pack of beer with only two beers remaining. Appellant was charged with evading arrest, DWI, and aggravated assault on a public servant.

The trial court did not permit the jury to hear testimony from appellant's expert, a former Hutto police chief who would have testified that officers deviated from standard procedures and used excessive force during the confrontations. The trial court denied appellant's requested instructions concerning necessity, self-defense, blood testing, and the jury's duty to disregard any evidence it finds was obtained illegally. In addition to appellant's guilty plea regarding the evading

3

arrest or detention count, the jury convicted appellant of DWI and aggravated assault on a public servant and found that he used or exhibited a deadly weapon in the commission of all three offenses.

## DISCUSSION

Appellant contends that the trial court erred by excluding his expert witness's testimony, denying his motion to suppress evidence, and denying his requested instructions. He also argues that the evidence is legally insufficient to support the jury's determination that he knowingly and intentionally threatened the DPS trooper.

**Did the trial court abuse its discretion by excluding appellant's expert witness?**

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). We will uphold a trial court's ruling on the admissibility of an expert witness's testimony as long as it falls "within the zone of reasonable disagreement." *Id.* We review the trial court's ruling on the relevancy for an abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

The trial court sustained the State's objection to the proposed testimony of Harold Thomas, who was the police chief at Hutto when appellant was arrested but no longer was not at the time of trial. The State objected that Thomas's testimony regarding whether the peace officers acted properly was a legal conclusion improper for an expert and, further, that testimony about police behavior was irrelevant to appellant's guilt or innocence. Appellant made a bill of exception of Thomas's testimony. Thomas said that he reviewed the video recordings from Hutto police cars and spoke with Hutto officers at a group meeting about the incident. He concluded that

4

the frontal assault (by non-Hutto officers) on appellant's vehicle at the auto shop was not the customary approach in that situation. He also opined that officers were not justified in shooting at appellant when he drove away from the auto shop or when he evaded them in the neighborhood. On cross-examination during the making of the bill, Thomas said that he did not see any video from non-Hutto officers or speak to other departments' officers, including Trooper Pahl. He did not see any video of appellant's encounter with Pahl in the neighborhood. After hearing the proposed testimony, the trial court stood by its ruling, which was that the officers did not use deadly force until deadly force was used against them. *See* Tex. Penal Code § 9.51. The court did not allow Thomas to testify before the jury.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401. Experts may testify if their opinion will assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.* R. 702. Appellant contends that Thomas's testimony would have helped the jury answer "whether the officer was lawfully discharging an official duty" when appellant threatened him—language that is part of the charge on the aggravated assault count.[1]

---

[1] Appellant does not argue for relevance to the count of evading arrest, to which he had pleaded guilty before trial, or the DWI count. The charge on aggravated assault provided in part as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Sergio Martinez Ramos, on or about February 8, 2011 in Williamson County, Texas, intentionally or knowingly threatened Cody Pahl, a person the defendant knew was a public servant **while the public servant was lawfully discharging an official duty**, or in retaliation or on account of an exercise of official power of performance of an official duty as a public

5

Thomas's proffered testimony expressly did not bear on whether Trooper Pahl was lawfully discharging an official duty. Testimony about the frontal approach on appellant's vehicle at the auto shop—which Thomas described as not "customary" rather than not "lawful"—as well as the shooting there was irrelevant to Trooper Pahl because he was not part of those activities, nor did appellant assault him there. Thomas agreed with appellant's trial counsel that "the officers" were not justified in shooting in the neighborhood and that they used unnecessary deadly force, but also agreed with the prosecutor that he never met or spoke with Trooper Pahl about what he saw or heard during his encounter with appellant. Thomas said he based his opinion on the video he saw, none of which showed that encounter. We conclude that, because Thomas's opinion regarding the justification for the use of force was not based on any information regarding Trooper Pahl's encounter with appellant, the trial court did not abuse its discretion by excluding the testimony as irrelevant to whether Trooper Pahl was lawfully discharging an official duty when appellant drove at him.

**Did the trial court err by denying appellant's motion to suppress evidence?**

Appellant contends that the trial court erred by refusing to suppress evidence that he contends was obtained in violation of the state and federal constitutions through the use of excessive force in his capture and arrest. *See* Tex. Code Crim. Proc. art. 38.23; *see also* U.S. Const. amends.

---

servant, with imminent bodily injury and used or exhibited a deadly weapon, namely, a motor vehicle, during the commission of the assault, then you will find the defendant guilty of the offense of Aggravated Assault on a Public Servant, as alleged in the indictment, and so say by your verdict.

(Emphasis added.)

6

IV, V, VI, XIV; Tex. Const. art. I, § 9. He contends that the trial court should have suppressed all evidence gathered after officers shot at him in the auto shop parking area.[2]

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts de novo. *Id*. at 447-48. When, as here, the trial court does not issue findings of fact, findings that support the trial court's ruling are implied if the evidence, viewed in a light most favorable to the ruling, supports those findings. *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). We give almost total deference to the trial court's implied findings, especially those based on an evaluation of witness credibility and demeanor. *Valtierra*, 310 S.W.3d at 447-48. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. at 448.

Implicit in the trial court's denial of the motion to suppress is a finding that the officers were justified in using deadly force against appellant. A peace officer is justified in using force when and to the degree the officer believes that the force is necessary to make or assist the making of an arrest and, before using force, the officer manifests his purpose to arrest and identifies himself as a peace officer. *See* Tex. Penal Code § 9.51(a). A peace officer may use deadly force when and to the degree he reasonably believes that deadly force is necessary to make an arrest if force is justified under subsection (a) and the officer reasonably believes either that the conduct for which arrest is authorized included the use or attempted use of deadly force so that there is a

---
[2] Appellant's First Amended Motion to Suppress relied on other grounds as well, but he does not reiterate those bases on appeal.

7

substantial risk that the person to be arrested will cause death or serious bodily injury if the arrest is delayed. *See id*. § 9.51(c).

The Supreme Court of the United States recently held that police officers may use deadly force to attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders without violating the Fourth Amendment. *Plumhoff v. Rickard*, No. 12-1117, slip op. at 9, 572 U.S. ___, ___, 134 S. Ct. 2012, ___ (2014). The Supreme Court also held that, if police are justified in shooting at a person to end a chase that is a severe threat to public safety, they need not stop shooting until the threat has ended. *Id.* at 11. In that case, police chased the defendant for over five minutes at speeds exceeding 100 miles per hour. He passed more than two dozen vehicles, forcing them to alter their course. He hit a police car and came temporarily to a near standstill briefly, but resumed maneuvering the vehicle, after which police shot at him fifteen times. The Court found that the shooting was reasonable because the defendant posed a threat to innocent bystanders and did not abandon his attempts to flee after the first or second fusillade. *Id.* at 11.

Appellant drew the attention of fellow drivers outside of Taylor when he veered from off the road into oncoming traffic and back again. He disregarded clear signals to stop in Taylor and blatantly attempted to escape from officers. Between Taylor and Hutto he sped away at over ninety miles per hour and occasionally drifted toward oncoming traffic. In Hutto, he continued to disregard signals to stop—including a police car blocking his path—and evaded officers by driving down railroad tracks and hiding among other parked cars at an auto shop. When officers found him parked, they repeatedly identified themselves and instructed him to surrender, but as uniformed officers approached from both front and rear and broke his window, appellant instead suddenly accelerated forward toward an officer who, as he avoided being hit, fired three shots.

8

This record contains sufficient evidence to support an implied finding that the officers reasonably believed that deadly force was necessary to make the arrest and that there was a substantial risk that appellant would cause death or serious bodily injury if his arrest was delayed. He showed disregard for the law, general traffic safety, and specific directives to stop, endangering the lives of himself, peace officers, and other motorists and passersby along the way. Sufficient evidence also supports an implicit finding that the officers had reasonable suspicion to stop him for suspicion of driving while intoxicated and then evading arrest. The record provides sufficient evidence to support the implicit conclusion that appellant did not demonstrate a violation of his constitutional rights. *See Plumhoff*, 572 U.S. at ___. Appellant has not shown that the trial court erred in denying his motion to suppress evidence gathered after he fled the auto shop.

**Did the trial court err in excluding appellant's requested jury charges?**

We review a claim of jury-charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). We first determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14. Where a defensive issue is raised by the evidence, a defendant is entitled to an affirmative instruction in the jury charge, regardless of the strength, weakness, or credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). If the court erred in giving its charge and appellant objected to the error at trial, reversal is required if the error causes some harm to appellant's rights. *See Almanza*, 686 S.W.2d at 171.

9

Appellant contends that the trial court erred by denying his requests for instructions on necessity, self-defense, the handling of his blood sample, and illegally-obtained evidence.

Necessity. Appellant requested an instruction that his conduct in committing the aggravated assault against Trooper Pahl was necessary. *See* Tex. Penal Code § 9.22.[3] Necessity is a confession-and-avoidance defense that requires the defendant to admit the elements of the charged offense—including the culpable mental state—while claiming the otherwise illegal action was justified. *See Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). Appellant did not at trial admit the culpable mental state for aggravated assault. *See* Tex. Penal Code §§ 22.01, .02 (requiring intentional or knowing actions). In fact, he argues on appeal that the evidence was insufficient to prove that he intentionally and knowingly threatened Trooper Pahl. The trial court did not err by denying appellant's requested necessity instruction.

Self-defense. Appellant requested an instruction that would have allowed the jury to decide whether he was justified in defending himself with deadly force from Trooper Pahl and others. A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). The use of force is not justified to resist an arrest that the actor knows is being made by a peace officer even if the arrest is unlawful, *id.* 9.31(b), unless before the actor offers any resistance, the peace officer uses or attempts to use greater force

---

[3] Otherwise illegal conduct is justified if (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm, (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law making his conduct otherwise illegal, and (3) there is no plainly apparent legislative purpose to exclude the justification claimed for the conduct. Tex. Penal Code § 9.22.

than necessary to make the arrest. *Id.* § 9.31(c). Deadly force is not justified unless immediately necessary to protect the actor against another's use or attempted use of unlawful deadly force. *See id.* § 9.32(a).

Appellant's argument ignores the undisputed evidence that he escalated from the pursuit to deadly force first. Peace officers did not use any force as appellant led them from Taylor to Hutto even though appellant had made fellow motorists feel endangered. Appellant chose to park at the auto shop. Officers then arrived at the shop in clearly marked law enforcement vehicles and with overhead lights activated. They were in uniform and, as they approached appellant's vehicle they clearly, loudly, and repeatedly instructed him to keep his hands visible and to get out of his car. Appellant stayed in his vehicle. Officers approached his vehicle from the back and front, including Taylor Police Sergeant Roy Jordan who put a spike strip in front of appellant's vehicle. Video showed that appellant then abruptly accelerated his vehicle, making contact with Sergeant Jordan, who pushed himself away from appellant's front right fender and fired his weapon as appellant's vehicle screeched away. Appellant encountered Trooper Pahl minutes later as the pursuit continued. The only evidence shows that appellant was not justified in resisting arrest or detention and used deadly force against a peace officer before they shot at him and before he encountered Trooper Pahl. No evidence supported giving appellant's requested instruction on self-defense.

Handling of appellant's blood sample. Appellant requested that the trial court instruct the jurors that, before considering blood-test results, they must find beyond a reasonable doubt that the blood sample was taken from appellant, that proper procedure for drawing the blood was used, that the blood was tested in accordance with Department of Public Safety regulations, and that the blood tested was the blood drawn. The proposed instruction listed actions that constituted proper

11

procedure and stated that if jurors had reasonable doubt about whether the blood draw complied with all of the requirements, they could not consider the results of the blood test for any purpose. Appellant argued that the instruction was needed because the hospital personnel called to testify did not recall drawing blood from appellant and could only testify about hospital policies.

While appellant has criticized the reliability of the blood sample taken and tested by hospital employees, he has not demonstrated error in the trial court's refusal to give his requested instruction. Generally, if a proposed instruction is not derived from the penal code, it is not law applicable to the case, and may instead be an impermissible comment on the weight of the evidence. *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012); *see also* Tex. Code Crim. Proc. art. 36.14. If a defensive theory is not explicitly listed in the penal code—if it merely negates an element in the State's case, rather than independently justifying or excusing the conduct—the trial judge should not instruct the jury on it. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). Appellant has not demonstrated that the blood-draw protocol is law applicable to the case under article 36.14, and thus has not demonstrated error in its exclusion from the jury charge. Once the blood sample was admitted into evidence, this is an argument that goes to the persuasive weight the jury should give to the sample and test result.

Illegally-obtained evidence. Appellant requested an instruction under Code of Criminal Procedure article 38.23 regarding evidence obtained after the confrontation at the auto shop. He requested an instruction that—unless the jury found beyond a reasonable doubt (1) that Trooper Pahl and other law enforcement officers did not engage in unlawful conduct including the use of excessive force or the unlawful use of deadly force, and (2) that Trooper Pahl had probable cause to believe that appellant was committing a felony in his presence—the jury must disregard

testimony from any law enforcement officer who participated in the arrest of appellant concerning his identity, his blood-test results, his driving in the neighborhood, and his driving with respect to Trooper Pahl.

A defendant is entitled to an instruction regarding whether evidence was obtained legally under the following conditions: (1) The evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). Appellant contends that there is a contested fact issue regarding the peace officers' use of excessive force in arresting appellant. He points to the facts that he never brandished a weapon during the entire pursuit, yet police shot his car thirty-two times and hit him several times.

Based on the evidence set out above in our discussion of the denial of the motion to suppress, we conclude that there was not a contested factual issue for the jury to resolve regarding the legality and constitutionality of police behavior leading to appellant's arrest and the subsequent gathering of evidence. Further, even if the trial court erred by failing to submit this issue to the jury, our review of the record persuades us that any such error was harmless under either standard of error. S*ee* Tex. R. App. P. 44.2. Our conclusion is supported by the jury's findings that appellant used his motor vehicle as a deadly weapon in evading arrest, driving while intoxicated, and aggravated assault. Under the penal code, this use of a deadly weapon in resisting arrest justified the peace officers' use of deadly force in response. *See* Tex. Penal Code § 9.51.

**Was the evidence insufficient to show that appellant intentionally and knowingly threatened Trooper Pahl?**

When reviewing the legal sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The reviewing court must defer to the jury's determination of weight and credibility of the witnesses' testimony. *Id.* We review all evidence in the record, both direct and circumstantial, without regard to whether it was properly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Appellant contends that the evidence was insufficient to show that he had the requisite mental state to commit the aggravated assault on Trooper Pahl.[4] A person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury. Tex. Penal Code § 22.01. A person commits an aggravated assault if he uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02. Appellant contends that his conduct was at most reckless, not intentional or knowing.[5] He argues that the entire chase shows his desire to avoid

---

[4] Appellant does not challenge the sufficiency of evidence to support other elements of the offense like the findings that the Expedition was used as a deadly weapon and that appellant knew that Trooper Pahl was a public servant.

[5] To convict appellant of aggravated assault, the jury must have found his actions were intentional or knowing, not merely reckless or any lesser mental state. The penal code defines these mental states as follows:

police, not hit them. When confronted with roadblocks, he repeatedly went around them. He notes that several shots had been fired at him. In the neighborhood, he hit then-Hutto Police Officer Chris Nall's vehicle rather than Officer Nall himself. When appellant encountered Trooper Pahl, his Expedition's tires were deflated and he appeared to Officer Nall to be traveling at most five miles per hour and had trouble controlling the vehicle. But Nall also testified that appellant maneuvered around barricading vehicles and through yards where several officers were standing and back to the street. Trooper Pahl's car was parked beyond the barricading vehicles, and he was standing on the road. Pahl testified that appellant accelerated and drove directly toward him. Fearing for his life, Pahl pulled his service weapon and pointed it at appellant, who continued to drive, "roaring" the Expedition's engine "higher and higher." Appellant hit the car Pahl had arrived in and been standing by as appellant approached. Pahl shot appellant as he passed. Pahl testified that appellant was trying to hit him and, had Pahl not run behind his car, appellant would have crushed him. Trooper Brad

---

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code § 6.03.

Gibson testified that he saw appellant drive in Pahl's direction. Although appellant was only driving five miles per hour, Gibson felt that Pahl's life was in danger.

The evidence is sufficient to support the jury's finding that appellant acted intentionally or knowingly when driving toward Trooper Pahl. Although appellant's capabilities may have been reduced by his intoxication, the shots fired, and the spike strips, he retained the ability to maneuver through the neighborhood streets and avoid a barricade by driving through yards. A rational jury could find that, when he then drove his Expedition straight toward Trooper Pahl, appellant intentionally or knowingly threatened Trooper Pahl with imminent bodily injury.

**CONCLUSION**

We affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:  June 26, 2014

Do Not Publish