**AFFIRMED and Opinion Filed June 1, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-20-00220-CR

**ANTHONY QUINN RIDER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1876651-P**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Garcia

A jury found appellant guilty of murder and assessed punishment at twenty-seven and a half years in prison. In three issues, appellant now argues the trial court erred: (i) in denying a request for an apparent danger instruction in the guilt–innocence charge; (ii) by failing to include both murder theories in the self–defense application instruction; and (iii) by admitting speculative testimony concerning the victim's state of mind. Finding no reversible error, we affirm the trial court's judgment.

# I. BACKGROUND

On the night in question, Dallas police responded to a reported shooting. When they arrived, Jimar Nichols was lying face down on the ground and had no pulse. When paramedics arrived, they confirmed that Nichols was dead.

Once inside the ambulance, the paramedics cut Nichols's shirt open to check for wounds. As they pulled the shirt from underneath him, a handgun with a chambered bullet fell out. The gun was two toned silver and black.

Detective Frank Serra was en route to the scene when he received a call about a suspect in a white pickup truck. The truck was later identified as belonging to appellant.

During his investigation, Detective Serra located two surveillance videos, one from a house on Lewiston Street (the "Lewiston video") and one from a house on Hustead Street (the "Hustead video"). The Hustead video shows appellant arriving at the scene in a white truck. Another man, identified as Harvey Hughes, arrived later, accompanied by Nichols.

After Hughes and Nichols arrived, the video shows Nichols standing by the passenger side of appellant's truck, facing the passenger window. Appellant then walks from the driver's side of the truck, around the back of the truck, to the passenger side. When Nichols notices appellant, he turns to face him. As Nichols begins walking toward appellant, appellant points a gun at him and begins to fire.

Nichols runs from appellant and falls to the ground, and appellant's truck quickly leaves the area. Witnesses reported that Hughes shot at appellant as he drove away.

Detective Serra obtained a warrant for appellant's arrest and a search warrant for his home. The white truck was found in appellant's garage and had two bullet defects in it. Four shell casings were found in the bed of the truck.

In appellant's post-arrest interview that was admitted into evidence and published for the jury, appellant told Detective Serra that he and his cousin had been in the area selling "weed." He said he was standing outside his truck when Hughes and another "guy" approached him and said he was not supposed to be there. Appellant had a problem with Hughes because he was always "starting stuff," but said he did not know Nichols.

Appellant claimed that he got back in the truck, and Hughes said that he was going to get a gun. Hughes began walking toward a nearby house. Appellant said he could not leave because Hughes's car had blocked his car from behind. He also said that someone told him, "They got guns, they're going to kill you." Nichols walked to the passenger side of appellant's truck. Appellant jumped out of the truck when he saw Nichols display a gun, walked around the back of the truck, and began shooting at Nichols. Nichols held the gun in front of his body and according to appellant, the gun was all black. Appellant then jumped back in the truck and drove away as Hughes began firing at him. Appellant said he dropped his gun out the window as he drove away while shooting.

Detective Serra also spoke with Hughes. Hughes told him where to retrieve a pistol.

Appellant was charged with murder under two different theories: (1) intentionally and knowingly causing Nichols's death by shooting him with a gun, and (2) committing an act clearly dangerous to human life by shooting Nichols with a firearm causing his death. The case was tried to a jury.

The Lewiston and Hustead videos were admitted into evidence at trial and were published to the jury. Detective Serra testified about the videos and his investigation.

The gun that was used to shoot Nichols was never recovered. The State's ballistics expert testified that several different types of shell casings were recovered from the scene and opined that none of the casings could have been fired from Nichols's gun. The shell casings in the back of appellant's truck were identified as coming from Hughes's gun.

The medical examiner testified that Nichols suffered two gunshot wounds—one to his left forearm and one to his chest. The chest wound perforated the heart and pericardia and caused Nichols's death.

The defense did not contest that appellant shot and killed Nichols. Instead, the defensive theory was that the shooting was justified because it was immediately necessary for appellant to defend himself from Nichols's use or attempted use of deadly force.

The jury found appellant guilty of murder and assessed punishment at twenty-seven years in prison. The trial court entered judgment in accordance with the verdict, and this timely appeal followed.

## II. ANALYSIS

### A. Apparent Danger Instruction

The disputed issue at trial was whether appellant acted in self-defense. Appellant's first issue argues that the trial court erred by refusing an "apparent danger" instruction to accompany the instruction on self-defense.

Section 9.32 of the Texas Penal Code provides, in relevant part, that "(a) A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force[.]" TEX. PENAL CODE ANN. § 9.32(a).

In turn, Section 9.31 provides that ". . . a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *See* TEX. PENAL CODE ANN. § 9.31(a). Section 1.07 of the Code defines the term "reasonable belief" to mean a "belief that would be held by an ordinary and prudent [person] in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(42). The abstract portion of the charge tracked these definitions.

It is well-settled that a defendant has the right to defend oneself against apparent danger to the same extent as if the danger was real. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Accordingly, the Court of Criminal Appeals has held that if the evidence at trial raises the issue of self-defense—whether against actual or apparent danger—the defendant has the right to a jury instruction on the issue of self-defense. *Id.* And in *Jones v. State*, the court held that when the issue is raised by the evidence, a defendant is entitled to a properly requested instruction on his right to defend himself against an "apparent danger," as viewed from the standpoint of the actor. *Jones v. State*, 544 S.W.2d 139, 142 (Tex. Crim. App. 1976).

But the Court of Criminal Appeals subsequently clarified its holding in *Jones*, concluding that it was only error to refuse to give an "apparent danger" instruction in cases in which the jury was not otherwise fully instructed on the law of self-defense. *Valentine v. State*, 587 S.W.2d 399, 400–01 (Tex. Crim. App. 1979). In *Valentine,* the court noted that a jury must be instructed, in accordance with the Penal Code, that a defendant's use of deadly force is justified if she reasonably believed that the deceased was using or attempting to use unlawful deadly force against her at the time of the shooting, and if she "reasonably believed that the use of force and the degree of force used were immediately necessary to protect herself against (the deceased's) use or attempted use of deadly force . . . ." *Id.* The court found it significant that the trial court had properly defined the term, "reasonable

–6–

belief," to mean "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant," and noted that this key definition was missing from the charge in *Jones*. The court thus concluded that the *Valentine* trial court's "reasonable belief" definition effectively instructed the jury on the concept that "a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his adversary." *Id*. at 401. In so concluding, the court further observed that the charge was given in accordance with Sections 1.07, 9.31, and 9.32 of the Penal Code, "all of which adequately presented the appellant's defensive theory and protected her rights." *Id*. at 401.

As our sister court later summarized:

[W]hen a defendant claims self-defense, his rights are preserved (and the concept of "apparent danger" is properly presented) when a jury charge: (1) states that a defendant's conduct is justified if he reasonably believed that the deceased was using or attempting to use unlawful deadly force against the defendant, and (2) correctly defines "reasonable belief."

*Bundy v. State*, 280 S.W.3d 425, 430 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Valentine*, 587 S.W.2d at 400–01).

Appellant acknowledges the *Valentine* holding but insists that some courts still follow the holding in *Jones*. He further argues that he was entitled to the requested instruction based on the "facts and circumstances of this case." Neither argument is persuasive.

Appellant cites *Courtney v. State*, 908 S.W.2d 48, 52–53 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) and *Torres v. State*, 7 S.W.3d 712, 715 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) to support his contention that courts continue to follow *Jones* even after the *Valentine* clarification. Appellant's reliance on these cases is misplaced.

Both *Courtney* and *Torres* held that it was error to refuse the requested apparent danger instruction. Significantly, however, in both cases the charge only allowed the jury's consideration of self-defense if it found that the defendant was actually under attack or attempted attack. *Courtney*, 908 S.W.3d at 51; *Torres*, 7 S.W.3d at 715. The charge in the present case was not similarly limited. Moreover, as this court and others have recognized, *Torres* relied solely on *Jones* and did not cite to or address *Valentine* at all. *See Cleary v. State*, 05-11-00040-CR, 2012 WL 987762, at *2 (Tex. App.—Dallas Mar. 26, 2012, pet. ref'd) (mem. op., not designated for publication); *Clark v. State*, No. 04-02-00551, 2004 WL 1835732, at *6 (Tex. App.—San Antonio Aug. 18, 2004, pet. ref'd) (mem. op., not designated for publication).

Here, the trial court instructed that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force." This satisfies the first *Valentine* requirement. *See Valentine*, 587 S.W.2d at 400–01; *Bundy*, 280 S.W.3d at 430. The second *Valentine* requirement was also

–8–

satisfied because the court properly defined "reasonable belief" as "a belief that would be held by an ordinary and prudent person in the same or similar circumstances as the defendant." *See Valentine*, 587 S.W.2d at 401; *Bundy*, 280 S.W.3d at 430.

The second part of appellant's argument, urging that the "facts and circumstances of this case" support the requested instruction appears to invite our departure from established precedent. But as an intermediate court of appeals, we are bound to follow the Court of Criminal Appeals' holdings and are not at liberty to carve out exceptions. *See generally*, *Chatham v. State*, 646 S.W.2d 512, 513 (Tex. App.—Dallas 1982, no pet.); *Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd). This is particularly true here where, in addition to the court's holding in *Valentine*, the law generally provides that "a jury charge which tracks the language of a particular statute is a proper charge on the statutory issue." *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994).

In the present case, the trial court's self-defense instruction encompassed the concept that "a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his adversary." *See Valentine*, 587 S.W.2d at 401. Accordingly, we conclude the trial court did not err by refusing the requested instruction on "apparent danger." Appellant's first issue is resolved against him.

**B.     Applying Self-Defense to Murder**

Appellant was indicted on two separate theories of murder. The first was that he intentionally or knowingly caused Nichols's death by shooting him with a firearm. The second theory was that appellant intended to cause serious bodily injury and committed an act clearly dangerous to human life by shooting Nichols, and thus caused his death. The charge allowed the jury to convict under either theory.

Appellant's second issue argues the charge was erroneous because the self-defense instruction omitted the second theory. According to appellant, he was egregiously harmed because it may have led the jury to believe self-defense applied only to the first theory of the offense.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* If error occurred, whether it was preserved then determines the degree of harm required for reversal. *Id.*

In this instance, the State agrees that the failure to include both theories of murder in the self-defense application paragraph was "likely" error. The application paragraph stated:

> Now, therefore, bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that on or about November 11, 2018, in Dallas County, Texas, the defendant did then and there intentionally or knowingly, cause the death of Jimar Nichols by shooting him with a firearm, a deadly

–10–

weapon, but you further find from the evidence, or have a reasonable doubt thereof, that the defendant reasonably believed that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by Jimar Nichols, you will acquit the defendant and say by your verdict "not guilty." If you so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense and say by your verdict "not guilty."

When self-defense is law applicable to the case, the trial court must inform the jury under what circumstances it should acquit a defendant of an offense based on self-defense. *Mendez v. State*, 545 S.W.3d 548, 556 (Tex. Crim. App. 2018). There were two theories of murder at issue in this case. Therefore, the charge was erroneous because it did not apply self-defense to both theories.

Having found error, we next consider whether appellant was egregiously harmed by the error. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as here, the error was not objected to, we reverse only if the error caused egregious harm such that the defendant was denied a fair and impartial trial. *Id.* "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make the case for conviction clearly and more significantly persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). The egregious harm inquiry is fact specific and must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013). In making an egregious harm determination, we consider (i) the entire jury charge, (ii) the state of the evidence, including the contested issues and weight of probative evidence, (iii) the argument

of counsel, and (iv) any other relevant information revealed by the trial record as a whole. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

(i) The charge as a whole.

The jury charge explained that "deadly force" means "force that is intended or known by the person using it to cause, or in the manner of it's use or intended use is capable of causing death or serious bodily injury." The charge further instructed that:

> A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. The use of force against another is not justified in response to verbal provocation alone.
>
> A person is justified in using deadly force against another:
>
> (1) if the person would be justified in using force against the other; and
>
> (2) when and to the degree the person reasonably believes the deadly force is immediately necessary:
>
> (A) to protect himself against the other's use or attempted use of unlawful deadly force; or
>
> (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated. sexual assault, robbery, or aggravated robbery.

By explaining deadly force as force used with intent to cause death or serious bodily injury, the definition encompassed both theories of murder— regardless of whether it was by intentionally or knowingly causing death or committing an act clearly dangerous to human life that caused death. Therefore, the definitions and instructions make clear that self-defense applies to both theories. The remainder of

–12–

the charge is unremarkable. We conclude that the charge as a whole weighs slightly against harm.

(ii) The state of the evidence

The state of the evidence does not support a finding of harm. There was no notable difference between the State's two theories of murder at trial. The jury could convict appellant under either theory if it found that appellant (1) shot Nichols with a firearm, and (2) caused Nichols's death. *See* TEX. PENAL CODE ANN. §19.02(b)(1), (b)(2). These facts were essentially undisputed at trial. Appellant told Detective Serra that he shot Nichols and the video evidence portrayed the shooting. The evidence also showed that Nichols died from a gunshot wound.

Neither the parties nor the court ever suggested to the jury that the availability of self-defense would depend on whether appellant shot Nichols with the intent to kill him or shot him with the intent to cause serious bodily injury. Instead, during voir dire, both parties discussed self-defense in the abstract, never suggesting that its application depended on the theory of the offense. The State's examination of witnesses did not seek to make a distinction between theories as applied to self-defense. And defense counsel's cross-examination focused on developing the self-defense theory generally, rather than the alternative theories under which the murder was charged. Therefore, the state of the evidence does not support a finding of harm.

(iii) The arguments of counsel

Likewise, counsel's arguments made no distinction between the two murder theories. Appellant agrees, but nonetheless insists that this prong of the analysis weighs in favor of harm. We find no support for this contention.

The State argued that appellant's actions were inconsistent with his self-defense claim, that the video evidence demonstrated that Nichols was not a threat, and that appellant's use of force had been preemptive. The defense criticized the police investigation and the State's failure to call eyewitnesses. Defense counsel then argued generally, "If you have a reasonable doubt that it was murder, or if the person was acting in self-defense, you find them not guilty." Nothing in these arguments was likely to confuse the jury on the applicability of self-defense.

(iv) Other factors

Having reviewed the record, we find no other factors pertinent to our analysis.[1] Based on our review, we cannot conclude that the charge error vitally affected the theory of self-defense by confusing the jury about its applicability to both theories of murder. Likewise, there is no basis to conclude that appellant was deprived of a valuable right or that the error made the case for conviction clearly and

---

[1] Appellant points to the State's discussion of the two theories of murder during voir dire but fails to explain how this is relevant to our analysis. We find nothing in the discussion that suggests self-defense is contingent upon the jury believing one theory of murder or the other.

more significantly persuasive. *See Taylor*, 332 S.W.3d at 490. Appellant's second issue is resolved against him.

## C.   Admission of Evidence

When questioning Detective Serra about the surveillance recording showing the interaction between appellant and the victim on the Hustead video, the State asked: "What is the victim's shoulder doing?" Detective Serra answered: "It's turning away as if he's caught off guard or surprised." Defense counsel objected based on speculation and was allowed to take the witness on voir dire.

On voir dire, Detective Serra said that he was interpreting the video based on his observations of the victim's body language. He denied that he was "trying to say what [the victim was] thinking." Defense counsel renewed his objection, stating, "He's trying to say . . . put words into what this person is thinking of what's going on. If they play the video through, the jury can see what happens." The objection was overruled.

Appellant's third issue argues the trial court erred in admitting the testimony because it violated rules 602 and 701. *See* TEX. R. EVID. 602, 701. Specifically, he contends that the testimony undercut appellant's self-defense theory.

We review a trial court's decision to admit evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). There is no abuse of discretion if the decision is "within the zone of reasonable disagreement." *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021).

The State admits that the testimony was "likely" inadmissible under rules 602 and 701. For the sake of argument, we can assume without deciding that the trial court's ruling was erroneous. The question then becomes whether the erroneous admission of the testimony caused appellant harm.

The trial court's erroneous admission of evidence generally constitutes nonconstitutional error. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000). We must disregard a nonconstitutional error if it does not affect a litigant's substantial rights. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla*, 78 S.W.3d at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.*

Viewing the entirety of the evidence, appellant's self-defense story was undermined by evidence other than the complained-of testimony throughout trial. Appellant's conduct after the shooting was inconsistent with his self-defense claim. Appellant told Detective Serra that he went home after the shooting and never called the police. Evidence of flight is circumstantial evidence of guilt. *See Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Appellant disposed of his gun and drove away, which also indicates consciousness of guilt. *See Anderson v. State,* No. 01-09-00108-CR, 2010 WL 1839945, at *3 (Tex. App.— Austin May 6, 2010, no pet.) (mem. op., not designated for publication).

In addition, appellant's version of events differed from what the jury saw in the videos. Appellant claimed he saw Nichols display a gun, but no gun is visible in the videos. When Detective Serra asked appellant if Nichols pointed the gun at him, appellant did not answer. Appellant was 100% sure Nichols's gun was all black, but the gun recovered from Nichols's body was black and silver. Moreover, Nichols's gun was not discovered until it fell out of his shirt in the ambulance after his death. One of the paramedics testified that there was no way the gun could have been on any exterior part of Nichols's clothing because the paramedics picked him up off the ground and flipped him over before they put him on the stretcher. There was also evidence that none of the shell casings recovered from the scene could have been fired from Nichols's gun.

Appellant also claimed he could not leave the scene before the shooting because Hughes's car blocked his truck from behind. Detective Serra testified, however, that this was not true. Specifically, he described how the video shows Hughes pull in behind appellant's truck, and then adjust his car and drive down the street before the shooting. While appellant claimed he jumped out of the car and began shooting, the video evidence shows him walking calmly around the back of the car to the passenger side where Nichols stood. Inconsistent statements and implausible explanations to police are "probative of wrongful conduct and are also circumstances of guilt." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Hernandez v. State*, No. 05-06-01238-CR, 2008 WL 588902, at *5 (Tex. App.—Dallas Mar. 5, 2008, pet. ref'd) (mem. op., not designated for publication) (credibility of defendant's self-defense claim undermined by defendant's conflicting stories, his behavior after the shooting, and claim that his memory was impaired).

In light of this evidence, it is highly unlikely that the jury's decision was adversely affected by Detective Serra's interpretation of appellant's shoulder movement. The jury watched the video. Serra did not purport to be an expert or otherwise in a position to possess information that the jury could not view for itself. The testimony about Nichols's shoulder movement, added little, if any weight to Detective Serra's testimony as a whole. Moreover, Detective Serra offered other interpretations of Nichols's posture and movements without objection. For example,

–18–

he testified that appellant came "casually" around the truck to shoot at Nichols, "who appeared to be in a state of shock." He also testified that as appellant approached Nichols, Nichols had his left arm in the air "as if he was trying to protect himself from the gunshots with his arm." Under these circumstances, we have a fair assurance that the evidence did not influence the jury or had but a slight effect. We resolve appellant's third issue against him.

## CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220220F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

ANTHONY QUINN RIDER,
Appellant

No. 05-20-00220-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1876651-P.
Opinion delivered by Justice Garcia. Justices Molberg and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 1, 2022